# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE FLINTKOTE COMPANY and | ) | Case No. 04-11300 (JKF) |
| FLINTKOTE MINES LIMITED, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## DEBTORS' MOTION FOR ORDER APPROVING
## SETTLEMENT WITH AVIVA INSURANCE COMPANY OF CANADA

The Flintkote Company ("Flintkote") and Flintkote Mines Limited ("Mines") (collectively, the "Debtors") hereby submit this motion (the "Motion") for an order pursuant to sections 363 and 105 of Title 11 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 9019 ("Bankruptcy Rule 9019"), authorizing and approving the proposed compromise and settlement between the Debtors and Aviva Insurance Company of Canada ("Aviva" and, collectively with the Debtors, the "Parties") upon the terms and conditions set forth in the *Settlement Agreement and Release By and Between The Flintkote Companies and Aviva Insurance Company of Canada* (the "Settlement Agreement"),[1] a true and correct copy of which is attached as Exhibit 1 hereto and incorporated herein by reference. In support of this Motion, the Debtors submit the Declaration of John H. Bay (the "Bay Declaration") filed concurrently herewith. In further support hereof, the Debtors respectfully state as follows:

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

## STATUS OF THE CASE AND JURISDICTION

1. Flintkote filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 1, 2004 (the "Petition Date").

2. On August 25, 2004, Mines, the wholly-owned subsidiary of Flintkote, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. On September 9, 2004, the Court entered an order directing the procedural consolidation and joint administration of these chapter 11 cases (Docket No. 238).

4. The Debtors have continued in possession of their respective properties and have continued to operate and manage their respective affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No request has been made for the appointment of a trustee or examiner in these cases. On May 19, 2004, the Office of the United States Trustee appointed the Official Committee of Asbestos Personal Injury Claimants (the "Asbestos Claimants Committee") (Docket No. 54). Additionally, on August 26, 2004, the Court appointed James J. McMonagle as the Representative of Future Asbestos Claimants (the "Future Claimants Representative") (Docket No. 199).

6. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The predicates for the relief sought herein are sections 363 and 105 of the Bankruptcy Code, Bankruptcy Rule 9019 and Delaware Bankruptcy Local Rule 6004-1.

## FACTUAL BACKGROUND

7. The Flintkote Companies have asserted and believe that they are insured under certain insurance policies issued by Aviva and identified in the Settlement Agreement (the "Known Aviva Policies").[2]

---

[2] All of the Known Aviva Policies were issued to the Flintkote Companies or their affiliates in the 1950s, before Flintkote was acquired by Genstar Corporation ("Genstar") (now

2

8.  The Debtors assert that Aviva is and will continue to be obligated under the Known Aviva Policies to make liability payments and pay defense costs in connection with Asbestos Personal Injury Claims. On April 14, 2004, Flintkote commenced a civil action against Aviva relating to the Aviva Policies[3] (the "California Coverage Litigation"). Aviva has raised disputes regarding the scope and amount of coverage, if any, available to Debtors under the Known Aviva Policies, and has commenced an action in the Superior Court of Justice for Ontario, Canada, seeking declaratory relief regarding coverage under the Aviva Policies (the "Ontario Coverage Litigation" and, together with the California Coverage Litigation, the "Coverage Litigation"). During the course of the Coverage Litigation, the Parties participated in numerous mediation sessions, overseen by former San Francisco Superior Court Judge Daniel Weinstein, also attended by the Asbestos Claimants Committee and Future Claimants Representative.

9.  In compromise and resolution of said disputes and uncertainties, Aviva has agreed to pay Flintkote (or the Trust, if formed), the total sum of One Hundred Fifty Million Dollars ($150,000,000), plus interest, as provided in the Settlement Agreement (the "Settlement Payment"). The Settlement Payment comprises amounts alleged due for past claims, as well as a buyback of coverage allegedly available for Claims under the Known Aviva Policies.

10.  In exchange for certain monetary payments and other considerations, and subject to the terms of the Settlement Agreement, the Parties wish to settle any and all disputes and issues between them regarding all past, present, and future Claims under or with respect to the Known Aviva Policies and any Claims related to any and all Asbestos Personal Injury

---

believed to be a subsidiary of Imperial Tobacco of Canada), and Genstar is not a named insured under the Known Aviva Policies. See Bay Decl. ¶ 4.

[3]  "Aviva Policies" means any and all insurance policies issued by Aviva, including, without limitation, the Known Aviva Policies and any and all unknown policies, under which the Releasors, or any of them, have asserted and/or could assert claims for coverage for Asbestos Personal Injury Claims against Aviva; provided, however, that the term "Aviva Policies" specifically does not include the London Policies or any insurance policies issued or acquired by Aviva after May 14, 2010.

3

Claims, past, present, or future, known or unknown, which have been brought or may be brought in the future against the Debtors under or with respect to the Aviva Policies, all as more specifically set forth in the Settlement Agreement. In addition, the Debtors wish to sell, and Aviva wishes to buy back, the Known Aviva Policies.

11. The relief requested in this Motion is supported by the Future Claimants Representative and the Asbestos Claimants Committee.

## RELIEF REQUESTED

12. By this Motion, the Debtors request that the Court enter an order approving the Settlement Agreement and finding that that the scope and content of the notice of settlement published by Aviva provides adequate notice of the settlement to all parties-in-interest. A copy of the proposed order approving the Settlement Agreement (the "Sale-Approval Order") is attached as Exhibit 2 hereto. A copy of the publication notice is attached as Exhibit 3 hereto.

## TERMS OF THE PROPOSED COMPROMISE AND SETTLEMENT[4]

### A. Payment of the Settlement Amount

13. In the Settlement Agreement, Aviva agreed to pay certain amounts into an interest-bearing account (the "Account"), and to subsequently transfer those funds, plus any interest accrued in the Account net of any fees or expenses related to the establishment of the Account, into a second account (the "Escrow Account") established pursuant to the Escrow Agreement attached as Attachment B to the Settlement Agreement.

a. On May 25, 2010, Aviva placed $150 million in United States Dollars (the "Settlement Amount") into the Account.

---

[4] This Motion provides a summary of the principal terms of the Settlement Agreement. All parties are encouraged to read the entirety of the Settlement Agreement attached as Exhibit 1 hereto. In the event any discrepancies exist between the terms of the Settlement Agreement and the summary contained in this Motion, the Settlement Agreement shall be the controlling document.

4

b. Within five (5) business days after the Execution Date, Aviva will have deposited the proceeds in the Account into the Escrow Account.

14. Promptly following the date on which the Sale-Approval Order becomes a Final Order, the Settlement Payment will be transferred from the Escrow Account to Flintkote – which transfer will be free and clear of any obligation to return said Settlement Payment – for contribution to (a) the Qualified Settlement Fund established by this Court's July 13, 2005 order [Docket No. 954], pursuant to Section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulations Section 1.468B-1 or (b) if formed, the Trust, provided, however, that Flintkote shall be authorized to transfer or retain any funds as necessary to satisfy Section III.B.1(b) of the Settlement Agreement.

15. The Settlement Payment shall not be subject to any deductions or charge-backs by Aviva of any kind, including, without limitation, claims of recoupment or deductibles, self-insured retentions, or retrospective or reinstatement premiums under the Aviva Policies.

B. **Termination of Policy Rights and Releases**[5]

16. Automatically upon receipt of the Settlement Payment by Flintkote or, if formed, the Trust, and without need for any further action by any Party, the Releasors[6] shall fully, finally and forever release, and shall be deemed to have fully, finally and forever released, the Releasees[7] from the following:

---

[5] The Debtors have highlighted the terms of the releases and sale provided for in the Settlement Agreement in compliance with Del. Bankr. L.R. 6004-1 in paragraph 40 of this Motion.

[6] The Settlement Agreement defines "Releasors" as (a) the Flintkote Companies and their respective (i) past or present subsidiaries and (ii) to the full extent of the Flintkote Companies' right and power to release claims on their behalf, officers, directors, employees, agents, representatives, shareholders, and attorneys, and (b) the Trust.

[7] The Settlement Agreement defines "Releasees" as (a) Aviva, its predecessors, parents, subsidiaries, and divisions, and (b) direct or indirect subsidiaries of Aviva's ultimate parent company, Aviva plc, as of May 14, 2010. Notwithstanding the foregoing, the term "Releasees" shall expressly not include Commercial Union Assurance Company, plc, or its assigns or successors-in-interest with respect to any rights and obligations arising out of, under or from the London Policies.

a. any and all Claims for insurance coverage and/or other obligations under the Aviva Policies that arise from, relate to, or are in connection with Asbestos Personal Injury Claims;

b. any and all Claims of any kind under, arising out of, related to, or in connection with the Known Aviva Policies, including, without limitation, Claims for insurance coverage, whether such Claims are known or unknown, suspected, claimed or alleged, fixed or contingent, including, without limitation, Claims for any past, present, pending, and future duties, obligations, damages, demands, actions, lawsuits, causes of action, payments, adjustments, executions, offsets, setoffs, costs, fees, defenses, debts, sums of money, accounts, reckonings, bills, bonds, covenants, contracts, controversies, agreements, promises, expenses, deductibles, retentions, premiums, accountings, interest charges, judgments, suits, liabilities, any alleged breach of the duty of good faith and fair dealing, unfair claims practices, unfair trade practices, bad faith, actual or constructive fraud, misrepresentation, insurer misconduct, misfeasance and/or malfeasance, violations of any statute (other than criminal violations), regulation or code, any other type of extra-contractual liability or alleged wrongdoing;

c. any and all Claims, whether known or unknown, suspected, claimed or alleged, fixed or contingent, arising from, related to, or in connection with the making, drafting, negotiation or execution of the Settlement Agreement; and

d. any and all Claims or matters arising from, related to, or in connection with the California Coverage Litigation and the Ontario Coverage Litigation, including, without limitation, any claims for payment of costs and expenses, court-imposed expenses, and expert fees.

17. Automatically upon receipt of the Settlement Payment by Flintkote or, if formed, the Trust, and without need for any further action by any Party, the Releasees shall fully, finally, and forever release, and shall be deemed to have fully, finally, and forever released, (a) the Flintkote Companies and their respective (i) past or present subsidiaries, and (ii) officers, directors, employees, agents, representatives, shareholders, and attorneys; and (b) the Trust from:

a. any and all Claims, whether known or unknown, suspected, claimed or alleged, fixed or contingent, arising from or relating to (i) the Aviva Policies (including, without limitation, any prior settlement discussions, claim handling, bad faith, conduct, interaction or lack of interaction between the Parties in connection with, relating to or arising out of the Known Aviva Policies); or (ii) the making, drafting, negotiation or execution of this Settlement Agreement;

b. any and all claims or matters arising from, related to, or in connection with the California Coverage Litigation and/or the Ontario Coverage Litigation, including, without limitation, any claims for payment of costs and expenses, court-imposed expenses, and expert fees; and

c. any right of Aviva to recover the Settlement Payment.

18. Notwithstanding anything else in the Settlement Agreement, with respect to the Aviva Policies other than the Known Aviva Policies, the Releasees shall not be released from Claims for insurance coverage that arise from, relate to, or are in connection with Claims other than Asbestos Personal Injury Claims, including, but not limited to, Claims that arise from, relate to, or are in connection with any property loss, cost, expense, or damage and/or any environmental loss, cost, expense, or damage.

19. Notwithstanding anything else in the Settlement Agreement, nothing in the Settlement Agreement shall release Aviva or any other Person or Entity from any liability under the London Policies, or any insurance policies issued or acquired by Aviva after May 14, 2010.

C. **Buyback of Known Aviva Policies Free and Clear of Liens, Claims and Interests**

20. Effective immediately upon the receipt of the Settlement Payment by Flintkote or, if formed, the Trust, and without any further action being required, the Known Aviva Policies, and any and all of the Flintkote Companies' rights and interests in the Known Aviva Policies, shall be deemed to have been sold back to Aviva pursuant to Sections 363(b) and (f) of the Bankruptcy Code free and clear of any liens, claims, and/or interests, within the

meaning of Sections 363(b)(1) and (f) of the Bankruptcy Code, to the fullest extent permissible under the Bankruptcy Code and any other applicable law, thus finally extinguishing all rights, duties, and coverage under the Known Aviva Policies. Aviva's buyback of the Known Aviva Policies shall operate to the fullest extent permitted by law as if Aviva had never issued the Known Aviva Policies and therefore was never required to have any dealings with, or actual or alleged duties or obligations whatsoever to, any Releasors or any Person allegedly harmed or injured by any of the Flintkote Companies.

21. In order to effectuate the sale of the Known Aviva Policies free and clear of liens, claims, and interests, the Sale-Approval Order contemplated by the Settlement Agreement provides for injunctive relief in favor of Aviva.

22. Nothing in the Settlement Agreement shall apply to, impair, or affect the Parties' rights and obligations set forth in the Settlement Agreement or to enforce the terms of the Settlement Agreement.

### D. Third Party Matters

23. Aviva has agreed not to seek reimbursement of any payments Aviva is obligated to make under this Settlement Agreement, or of any other payments Aviva has made to or for the benefit of the Debtors or the Trust, whether by way of a claim for contribution or subrogation or otherwise, from any other insurer of the Debtors. Because Aviva did not have reinsurance for the Known Aviva Policies, there is no provision in the Settlement Agreement preserving Aviva's rights to recover reinsurance.

24. The Settlement Agreement also provides Aviva with the option to provide more extensive notice of the Settlement Agreement than required by the Bankruptcy Rules. Aviva has undertaken to provide published notice of this Motion and of the hearing on this Motion at least 21 days before the hearing, in the form attached as Exhibit 3 hereto, at least once in each of the following publications: The Wall Street Journal; USA Today; the Chicago Tribune; the St. Louis Post-Dispatch; The New York Times; the Los Angeles Times; the San Francisco Chronicle; The Dallas Morning News; the Houston Chronicle; The Philadelphia

Inquirer-Daily News; and The Washington Post.[8] The Parties seek approval of the scope and content of such additional notice.

### E. Certain Bankruptcy Obligations

25. The Debtors have agreed, in connection with the Plan, that they will use their best efforts to obtain pursuant to 11 U.S.C. §§ 524(g)(3), 524(g)(4), or 105, issuance of the Confirmation Order granting and approving the Protective Injunctions[9] for the benefit of Aviva. The Parties also agreed to use their best efforts to see that the Sale-Approval Order is entered and becomes a Final Order.

26. The Parties have agreed to cease all litigation activities pertaining to each other in the Bankruptcy Case to the extent provided in the Settlement Agreement in order to facilitate the implementation of the Settlement Agreement.

27. Flintkote has also agreed that, following receipt of the Settlement Payment by Flintkote or, if formed, the Trust, if any person asserts against Aviva any Claim that is either (i) subject to the permanent injunction(s) contained in the Sale-Approval Order or (if applicable) the Protective Injunctions, or (ii) that is based upon or forms the basis of any Asbestos Personal Injury Claims against the Aviva Policies, then the Trust, if it has been established (or the Flintkote Companies, if the Trust has not been established) will, at its or their own expense, defend (i) the validity of the permanent injunction contained in the Sale-Approval Order and (if applicable) the Protective Injunctions and the application of such injunction(s) to Aviva, and will expend reasonable best efforts to establish that such Claim is enjoined as to Aviva and (ii) Aviva from having any liability for Asbestos Personal Injury Claims under the Aviva Policies, in light of the release of Aviva from all Asbestos Personal Injury Claims under the Aviva Policies

---

[8] Aviva has also undertaken to provide published notice of this Motion and of the hearing on this Motion at least 14 days before the hearing, in the form attached as Exhibit 3 hereto, at least once in Mealey's Asbestos Litigation Reporter.

[9] "Protective Injunctions" means the permanent injunctions to be issued by the District Court pursuant to Section 524(g) if the Plan is confirmed, including without limitation the Third Party Injunction provided in the Plan in respect of Settling Asbestos Insurance Companies and the Insurance Entity Injunction.

pursuant to this Settlement Agreement and any order approving the Settlement Agreement, as applicable; provided, however, that both the Flintkote Companies and the Trust combined shall not be obligated to expend any more than $100,000 in the aggregate with respect to all such efforts. Aviva has agreed to cooperate with the Flintkote Companies and the Trust in their efforts to obtain such relief.

28. Aviva has agreed that, when the Sale-Approval Order becomes a Final Order, Aviva shall withdraw and be deemed to have withdrawn any and all (a) Claims made in the Bankruptcy Case against the Debtors or the Debtors' estates and (b) arguments or positions in opposition to confirmation of the Plan.

29. Flintkote has agreed that, within five days after entry of the Sale-Approval Order, Flintkote will file in the Bankruptcy Case a plan modification or other appropriate document (a) designating Aviva as a Settling Asbestos Insurance Company (as such term is defined in the Plan) and (b) designating the Settlement Agreement as an Asbestos Insurance Settlement Agreement (as such term is defined in the Plan), subject in each case to Flintkote or, if formed, the Trust receiving payment of the Settlement Payment.

### F. Pending Coverage Litigation

30. The Parties will file a stipulation seeking a stay of all activity in the California Coverage Litigation until after the Sale-Approval Order has become a Final Order, subject to the terms of the termination provisions set forth in Section XV of the Settlement Agreement.

31. The Parties further agree that, within five business days after the receipt of the Settlement Payment by Flintkote or, if formed, the Trust: (a) Flintkote will dismiss, with prejudice, the entire California Coverage Litigation; (b) Aviva will also dismiss, with prejudice, the entire California Coverage Litigation; and (c) Aviva shall also dismiss with prejudice the entire Ontario Coverage Litigation.

### G. Effective Date of the Settlement Agreement

32. The Settlement Agreement shall become effective on the date the Sale-Approval Order becomes a Final Order, except for Sections III, IV, V, VIII, IX, XIV and XV,[10] which became effective on the Execution Date.

## BASIS FOR RELIEF

### A. The Legal Standard

33. Federal Rule of Bankruptcy Procedure 9019 provides in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). The Third Circuit Court of Appeals has stated that section 363 of the Bankruptcy Code is the substantive provision requiring a hearing and court approval of settlements, while Bankruptcy Rule 9019 establishes the procedure by which such approval may be secured. See In re Martin, 91 F.3d 389, 395 n.2 (3d Cir. 1996) (distinguishing substance of section 363 from procedural effect of Rule 9019).

34. In determining whether to approve a settlement pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, the Third Circuit has also instructed that a Bankruptcy Court should "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Id. at 393 (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)). In making this determination, a court should consider four criteria:

(1) the probability of success in the litigation;

---

[10] These sections include (a) Aviva's obligation to deposit the Settlement Amount into the Account and then deposit funds held in the Account into the Escrow Account and (b) the Parties' obligations to (i) stand still in the Coverage Litigation and Aviva's opposition to confirmation, (ii) pursue approval of the Settlement Agreement in the Bankruptcy Case and (iii) confer if the remainder of the Settlement Agreement should not become effective.

> (2) the likely difficulties in collection;
> (3) the complexity of the litigation involved and related expense and inconvenience; and
> (4) the interests of the creditors.

Id.; see also In re Marvel Entm't Group, Inc., 222 B.R. 243 (D. Del. 1998) (citing TMT Trailer factors as controlling whether settlement should be approved). The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interest of the estate." In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).

35. In ruling on a proposed compromise, however, the Court should not substitute its own judgment for that of the trustee or debtor-in-possession. See In re Nat'l Org. For Children, Inc., No. 06-10777ELF, 2007 WL 1577753, at *7 (Bankr. E.D. Pa. May 31, 2007). Nor is the Court required to determine whether the settlement was the best that the trustee could have obtained. See In re W.T. Grant, 699 F.2d 599, 608, 613 (2d Cir. 1982), cert. denied 464 U.S. 822 (1983). Rather, the Court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" Id. at 608; In re Bell & Beckwith, 87 B.R. 472, 474 (N.D. Ohio 1987). In determining whether to approve a compromise, a Bankruptcy Court is not required to conduct a "mini-trial" on the merits of the underlying cause of action. U.S. v Alaska Nat'l Bank of the North (In the Matter of Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982); In re Blair, 538 F.2d 849, 851-52 (9th Cir. 1976).

36. As part of the consideration for the payment of the Settlement Amount, the Settlement Agreement provides for a buyback of the Debtors' rights and interests under the Known Aviva Policies by Aviva pursuant to sections 363(b), (f) and (m) of the Bankruptcy Code. Section 363(b)(1) provides that a trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. Section 363(f) allows a debtor to sell property of the estate pursuant to section 363(b)(1) "free and clear of any interest" in such property, only if one or more of the following requirements are met:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Section 363(f) is phrased in disjunctive terms, so the satisfaction of any one requirement is sufficient to allow the Court to enter an order granting relief under the section. See In re Decora Indus., Inc., 2002 U.S. Dist. LEXIS 27031 at *19 (D. Del. May 20, 2002). Section 363(f)(4) is satisfied here because the rights of the holders of Claims in the Known Aviva Policies are subject to a bona fide dispute. Section 363(f)(5) is satisfied because any person or entity that has asserted or may in the future assert that it is an ultimate beneficiary under the Known Aviva Policies could be compelled in a legal or equitable proceeding to accept a money satisfaction of its claims. The Settlement Agreement provides that, except to the extent required to satisfy Section III.B.1(b) of the Settlement Agreement, the Settlement Payment will ultimately be placed in the Qualified Settlement Fund or the Trust for the benefit of persons or entities holding Asbestos Personal Injury Claims allegedly covered by the Known Aviva Policies, providing a money satisfaction for such claims.

37. In addition, injunctive relief in support of a sale free and clear of claims and liabilities under section 363 is permissible and appropriate here. This Court has on numerous occasions, in this case and in others, enjoined pursuit of released claims and liabilities in connection with a sale and buyback of insurance coverage. See, e.g., In re The Flintkote Co., 04-11300 (JFK) (Bankr. D. Del. Mar. 18, 2008) (approving buyback of insurance by American Home Assurance Company and enjoining claims under section 363); In re The Flintkote Co., 04-11300 (JFK) (Bankr. D. Del. Feb. 25, 2008) (approving buyback of insurance by National Union

Fire Insurance Company of Pittsburgh PA, et al., and enjoining claims under section 363); In re Federal-Mogul Global, Inc., 01-10578 (JKF) (Bankr. D. Del. Nov. 8, 2007) (approving buyback of insurance by OneBeacon America Insurance Company and enjoining claims under section 363). Section 105(a) of the Bankruptcy Code also authorizes bankruptcy courts to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title," 11 U.S.C. § 105(a). That section, in support of a sale pursuant to section 363, provides additional authority for the injunction requested here. See, e.g., In re Quigley Co., 04-15739 (SMB) (Bankr. S.D.N.Y. Jun. 9, 2009) (approving buyback of insurance by Hartford Insurance, and enjoining claims under section 105); In re Congoleum Corp., 03-51524 (KCF) (Bankr. D.N.J. Sep. 20, 2006) (approving buyback of insurance by Century Indemnity Company et al., and enjoining claims under both sections 363 and 105); In re Burns and Roe Enters., Inc., 00-41610RG (Bankr. D.N.J. Feb. 17, 2005) (approving buyback of insurance by Hartford Insurance, and enjoining claims under section 105); Macarthur Co. v. Johns-Manville Corp., 837 F.2d 89, 93 (2d Cir. 1988) (approving the imposition of a channeling injunction in favor of certain insurance carriers under both sections 363 and 105). Aviva's willingness to enter into the Settlement Agreement and to provide the Settlement Payment is contingent on this Court's grant of injunctive relief. Therefore, an injunction in aid of the sale free and clear under section 363 is justified and appropriate here.

38. Section 363(m) of the Bankruptcy Code provides that an appeal from an order authorizing the sale or lease of a debtor's property will not affect the validity of the sale or lease to an entity that purchased or leased the property in good faith, unless a stay of the sale is obtained pending appeal. See Pittsburgh Food & Beverage, Inc. v. Ranallo, 112 F.3d 645, 647-48 (3d Cir. 1997). The relevant test for a "good faith purchaser" is one who buys in good faith and for value. In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986). Typically, the requisite misconduct necessary to establish a lack of good faith involves "fraud, collusion between the purchaser and other bidders of the trustee, or an attempt to take grossly unfair advantage of other bidders." Id. The Settlement Agreement, which involves the resolution of

coverage disputes under the Aviva Policies, has been thoroughly negotiated and analyzed by the Parties' respective counsel pursuant to arm's length negotiation and consultation with the Asbestos Claimants Committee and Future Claimants Representative, including successive rounds of mediation in which the Asbestos Claimants Committee and Future Claimants Representative participated with the Parties. Accordingly, because the Settlement Agreement has been openly negotiated among all parties, and because the Asbestos Claimants Committee and Future Claimants Representative have approved the Settlement Agreement, no parties have been disadvantaged during the settlement negotiations or leading up to the execution of the Settlement Agreement.

39. Thus, for all the aforementioned reasons, the relief requested by the Motion is consistent with sections 105, 363(b), (f) and (m) of the Bankruptcy Code and therefore the Court should approve the Settlement Agreement and grant the requested relief.

40. In addition to the requirements set forth in Bankruptcy Rule 9019 and Bankruptcy Code section 363, a debtor must also comply with Delaware Bankruptcy Local Rule 6004-1 ("6004-1"). In connection with the buyback and in satisfaction of 6004-1, which applies to motions seeking approval "of sale, bid or auction procedures in anticipation of or in conjunction with a Sale Motion," copies of the Settlement Agreement and Sale-Approval Order are attached as Exhibits 1 and 2, respectively, as required by 6004-1(b)(i) and (b)(ii). Further to 6004-1(b)(iv), the terms of the buyback are as follows: provisions regarding the releases are contained in paragraph 6 of the Sale-Approval Order and Section VI of the Settlement Agreement; provisions regarding the sale nature of the Settlement Agreement are found in paragraph 8 of the Sale-Approval Order and Section VI of the Settlement Agreement; and no auction is contemplated for these assets.

B. **The Settlement Agreement Should be Approved**

41. The Settlement Agreement meets the statutory and applicable case law standards for the approval of a settlement and a buyback of certain insurance policies, and thus

15

should be approved. The Settlement Agreement provides for payment in consideration of amounts alleged due for past claims, as well as a buyback of coverage allegedly available for Claims under the Known Aviva Policies and assists the Debtors in achieving one of their principal objectives, which is to bring additional assets into their estates by settling disputes over remaining insurance coverage amounts. In addition to bringing in settlement proceeds that can eventually be distributed to creditors, the Settlement Agreement also serves the purpose of consensually resolving one of the principal remaining disputes in this Bankruptcy Case, thus avoiding the dissipation of Debtors' valuable time and resources in continuing to pursue the Coverage Litigation which Flintkote has been pursuing for over six years at considerable expense. Finally, the Settlement Agreement is the product of extensive, arm's length negotiations between the Debtors and Aviva, as well as consultation with the Asbestos Claimants Committee and the Future Claimants Representative. The negotiations, extending for more than a year and involving extensive formal mediation, have involved a detailed examination by each Party and by the Asbestos Claimants Committee and the Future Claimants Representative regarding the effect of the Settlement Agreement on each constituency's respective rights and obligations.

42. As applied in the instant case, the TMT Trailer factors strongly support this Court's approval of the Settlement Agreement as in the best interest of the Debtors, their estates and their creditors. The Debtors submit that the Settlement Agreement should be approved for each of the following reasons:

(a) *Probability of Success.* The Debtors believe that, although they would ultimately prevail over Aviva in the Coverage Litigation, the material benefits of a complex litigation victory are outweighed by the certain and substantial sum received immediately from Aviva under the Settlement Agreement and by the uncertainty as to timing, collection, and amount of the ultimate judgment resulting from an extended jury trial, as well as the considerable expenditure of the Debtors' time and resources in continuing to pursue the Coverage Litigation. Bay Decl. at ¶ 6-7. Moreover, although the Debtors believe that they would prevail at trial,

16

Aviva has made clear in pleadings in this Bankruptcy Case that it would appeal any adverse judgment to the Ninth Circuit Court of Appeals, thus adding delay to the point at which the Debtors or the Trust would receive any payment from Aviva, even if Debtors were to prevail on appeal. Thus, the consideration offered by Aviva in the Settlement Agreement, which provides for a very significant immediate payment to the Debtors, should be favored because it provides for a guaranteed recovery for the Debtors without incurring any further litigation risk or expenses. Id.

(b) *Difficulties in Collection.* The disputes between Debtors and Aviva regarding the nature and existence of any insurance coverage available to the Debtors under the Aviva Policies strongly militate in favor of the Court's approval of the Settlement Agreement. Without a compromise, the Debtors might only be able to collect on the Aviva Policies through the Coverage Litigation, which involves an uncertain recovery and could result in a smaller and later recovery to the Debtors than the consideration and timing provided by Aviva in the Settlement Agreement. Id.

(c) *Complexity of Litigation; Related Expense.* The consensual resolution of this insurance coverage dispute through the Court's approval of the Settlement Agreement would conserve the Debtors' resources, financial and otherwise, and avoid the attendant cost and delay associated with the rather complex factual and legal issues that would have to be addressed in the Coverage Litigation. Moreover, as noted above, Aviva has stated its intention to appeal certain legal determinations already made by the court in the Coverage Litigation, which would further delay the ultimate recovery. Accordingly, this factor strongly supports approval of the compromise.

(d) *Interest of Creditors.* Another key factor that weighs heavily in favor of approving the Settlement Agreement is this Court's consideration of the best interest of the Debtors' creditors. Flintkote solicited the input of counsel for the Asbestos Claimants Committee and Future Claimants Representative (both of whom represent the interests of the creditor body) in respect of this settlement and involved them in the formal mediation sessions.

Bay Decl. at ¶ 8.  After participating in the mediation sessions, the Asbestos Claimants Committee and the Future Claimants Representative support this settlement and have formally approved the Settlement Agreement.  Id.  Moreover, creditors will benefit from approval of the Settlement Agreement because it will eliminate ongoing objections to confirmation and related discovery that have been put forward by Aviva.

## NO PRIOR REQUEST

43. No previous motion for the relief requested herein has been made by the Debtors to this or any other court.

## NOTICE

44. Notice of this Motion and a copy of the Motion have been provided to (i) Aviva's counsel; (ii) the Office of the United States Trustee; (iii) counsel to the Asbestos Claimants Committee; (iv) counsel to the Future Claimants Representative; (v) those persons who have requested notice pursuant to Bankruptcy Rule 2002; (vi) counsel to Debtors' insurers, including Aviva; and (v) counsel to persons who, as of the date of the filing of the Motion, were known to Debtors to have represented persons who asserted Asbestos Personal Injury Claims against one or both of the Debtors.  In addition, notice of the Motion and the hearing on the Motion will be provided no less than 21 days before the hearing by publication as described more fully in paragraph 24 herein.  In light of the nature of the relief requested in this Motion, the Debtors submit that no other or further notice is required.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit 2, (i) approving the Settlement Agreement pursuant to sections 363 and 105 of the Bankruptcy Code and Bankruptcy Rule 9019, (ii) approving the scope and content of the notice provided of the Settlement Agreement, (iii) entering the injunction set forth in paragraph 9 of the proposed Sale-Approval Order, and (iv) granting such other and further relief as the Court may deem proper.

Dated: June 11, 2010
      Wilmington, Delaware

Respectfully submitted,

SIDLEY AUSTIN LLP
Kevin T. Lantry
Jeffrey E. Bjork
Christina M. Craige
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-6000
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

-and-

PACHULSKI, STANG, ZIEHL & JONES LLP

    */s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for Debtors and Debtors-in-Possession