# EXHIBIT 1

**SETTLEMENT AGREEMENT AND RELEASE
BY AND BETWEEN THE FLINTKOTE COMPANIES
AND AVIVA INSURANCE COMPANY OF CANADA**

This Settlement Agreement and Release (the "Settlement Agreement") is a final

settlement agreement among The Flintkote Company ("Flintkote") and Flintkote Mines Limited,

as debtors and debtors-in-possession (collectively, the "Flintkote Companies"), on the one hand,

and Aviva Insurance Company of Canada, successor-in-interest to General Accident Assurance

Company of Canada, as further defined in Section I herein ("Aviva"), on the other hand.

**WHEREAS**, numerous Asbestos Personal Injury Claims (as defined hereafter) have been

asserted against the Flintkote Companies; and

**WHEREAS**, Aviva issued or allegedly issued to the Flintkote Companies the Aviva

Policies (as defined hereafter); and

**WHEREAS**, the Flintkote Companies have asserted that Aviva is or will be obligated

under the Aviva Policies to make liability payments and pay defense costs in connection with

Asbestos Personal Injury Claims asserted against the Flintkote Companies; and

**WHEREAS**, on April 14, 2004, Flintkote commenced a civil action against Aviva

relating to the Aviva Policies, which was originally commenced in the Superior Court of the

State of California in and for the City and County of San Francisco, but was removed to the

United States District Court for the Northern District of California, and styled The Flintkote

Company v. General Accident Assurance Company of Canada, et al., Case No. C 04-01827

MHP (the "California Coverage Litigation"); and

**WHEREAS**, Aviva commenced an action in the Superior Court of Justice for Ontario, Canada, seeking declaratory relief regarding coverage under the Aviva Policies, styled <u>Aviva Insurance Company Limited, et al. v. Genstar Stone Products, Inc., The Flintkote Company</u>, Court File No. 04-CV-267616CM3 (the "Ontario Coverage Litigation"); and

**WHEREAS**, on May 1, 2004, Flintkote commenced a reorganization case pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case No. 04-11300 (JKF), and on August 25, 2004, Flintkote Mines Limited also commenced a reorganization case pursuant to Chapter 11 of the Bankruptcy Code in the same court under Case No. 04-12440 (JKF) (jointly administered with Case No. 04-11300 under Case No. 04-11300) (the "Bankruptcy Case"); and

**WHEREAS**, in the Bankruptcy Case, the Flintkote Companies are seeking protection from Asbestos Personal Injury Claims for themselves and certain third parties pursuant to 11 U.S.C. §§ 524(g) and 105 and, in that regard, the Flintkote Companies and others have filed the Plan (as defined hereafter); and

**WHEREAS**, Aviva has appeared in the Bankruptcy Case and taken certain actions and positions in opposition to the confirmation of the Plan; and

**WHEREAS**, the Flintkote Companies and Aviva desire to settle, on the terms set forth in this Settlement Agreement, any and all disputes and issues between them regarding all past, present, and future Claims under or with respect to the Known Aviva Policies and any Claims related to any and all Asbestos Personal Injury Claims, past, present, or future, known or unknown, which have been brought or may be brought in the future against the Flintkote Companies under or with respect to the Aviva Policies; and

- 2 -

**WHEREAS,** following a series of mediation sessions, the Parties executed a term sheet setting forth the material terms of their desired settlement on or about May 14, 2010; and

**WHEREAS,** representatives of the Committee and the FCR (both as defined hereafter) participated in the mediation sessions and negotiated directly and through the mediator with representatives of Aviva with respect to the resolution of the disputes over alleged coverage for Asbestos Personal Injury Claims, and specifically negotiated the payment provisions and settlement consideration set forth in Section III of this Settlement Agreement, as well as other material terms of the settlement and the Settlement Agreement, with representatives of Aviva; and

**WHEREAS,** the Committee has determined that the settlement consideration described in Section III of this Settlement Agreement is fair and equitable to present holders of Asbestos Personal Injury Claims; and

**WHEREAS,** the FCR has determined that the settlement consideration described in Section III of this Settlement Agreement is fair and equitable to future holders of Asbestos Personal Injury Claims and Demands; and

**WHEREAS,** the Flintkote Companies, Aviva, the Committee, and the FCR actively participated in, and were kept apprised of, the negotiations leading to this Settlement Agreement and fully and freely consent to this Settlement Agreement and each of the provisions set forth herein, and have sought legal advice from their respective attorneys and believe that this Settlement Agreement is in each Party's best interests and, in the case of the Committee and the FCR, their respective constituency's best interests;

**NOW, THEREFORE,** in consideration of the foregoing facts and the mutual covenants contained herein, the sufficiency of which is hereby acknowledged, and intending to be legally

bound hereby, subject to the approval of the Bankruptcy Court, the Parties do hereby agree as follows:

## I. DEFINITIONS

All capitalized terms in this Settlement Agreement shall have the meanings set forth below, unless otherwise defined herein. Capitalized terms not defined in this Settlement Agreement shall have the meaning set forth in the Plan (as hereafter defined). Each defined term stated in the singular shall include the plural and each defined term stated in the plural shall include the singular as the context warrants. The word "including" means "including but not limited to." In construing this Settlement Agreement, the definitions set forth in this Section I shall control in the event of any inconsistency between the definitions in this Settlement Agreement and those in the Plan.

(a) "Approval Motion" means that motion to be filed by the Flintkote Companies in the Bankruptcy Case pursuant to, *inter alia*, Sections 105 and 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, seeking entry of the Sale-Approval Order.

(b) "Asbestos Personal Injury Claim" means a liquidated or unliquidated Claim against one or both of the Flintkote Companies, or their present or former officers, directors, or employees of any of them, whether asserted by agents or employees of the Flintkote Companies or any other Person or Entity, whether in the nature of or sounding in tort, contract, warranty, employer liability, or any other theory of law, equity, or admiralty, whatsoever, for, attributable to, or arising under the laws of any jurisdiction, by reason of, directly or indirectly, physical, emotional, or other personal injuries, death, or other damages caused, or allegedly caused, in whole or in part, directly or indirectly, by the presence of, or exposure to, asbestos, including, but not limited to,

asbestos-containing products, manufacturing processes, improvements to real property, or

materials manufactured, sold, supplied, produced, specified, selected, distributed, or in any way

marketed or mined by one or both of the Flintkote Companies or their predecessors, and arising

or allegedly arising, directly or indirectly, from acts or omissions of one or both of the Flintkote

Companies or the predecessors of either of them, including, but not limited to, all claims, debts,

obligations, or liabilities for compensatory damages (such as, without limitation, loss of

consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship,

proximate, consequential, general, and special damages) and punitive damages. Asbestos

Personal Injury Claims shall include, without limitation, (i) Demands and (ii) claims for

contribution, reimbursement, subrogation, or indemnity, whether contractual or implied by law

(as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction(s)),

and any other derivative or indirect Asbestos Personal Injury Claims of any kind whatsoever,

whether in the nature of or sounding in contract, tort, warranty, or any other theory of law,

equity, or admiralty. Notwithstanding the foregoing or anything else contained in this Settlement

Agreement, the term "Asbestos Personal Injury Claim" shall not include (i) any workers'

compensation claim brought directly against either or both of the Flintkote Companies by a past

or present employee of either of them under any applicable workers' compensation statute or (ii)

any Claim which is not also included within the definition of "Asbestos Personal Injury Claim"

set forth in the version of the Plan filed on the docket in the Bankruptcy Case on July 20, 2009

(regardless of whether such definition in the Plan is subsequently amended or modified).

(c)  "Asbestos Claimant" means the holder of an Asbestos Personal Injury Claim.

(d) "Aviva" means Aviva Insurance Company of Canada, successor-in-interest to General Accident Assurance Company of Canada, and any other entities to the extent of their responsibility to the Flintkote Companies for the Known Aviva Policies of General Accident Assurance Company of Canada, General Accident Fire and Life Assurance Corporation Limited, and General Accident Fire and Life Assurance Corporation Limited of Perth, Scotland. The term "Aviva" shall expressly not include Commercial Union Assurance Company, plc, or its successors-in-interest with respect to any rights and obligations arising from the London Policies.

(e) "Aviva Policies" means any and all insurance policies issued by Aviva, including, without limitation, the Known Aviva Policies and any and all unknown policies, under which the Releasors, or any of them, have asserted and/or could assert claims for coverage for Asbestos Personal Injury Claims against Aviva; provided, however, that the term "Aviva Policies" specifically does not include the London Policies or any insurance policies issued or acquired by Aviva after May 14, 2010.

(f) "Bankruptcy Case" means the Chapter 11 bankruptcy cases (i) commenced by Flintkote in the Bankruptcy Court on May 1, 2004, Case No. 04-11300 (JKF), and (ii) commenced by Flintkote Mines Limited on August 25, 2004, Case No. 04-12440 (JKF), both of which are pending in the United States Bankruptcy Court for the District of Delaware and are being jointly administered.

(g) "Bankruptcy Code" means the laws of the United States relating to bankruptcy or reorganization, including, without limitation, title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended, but only as applicable to the Bankruptcy Case. Unless otherwise indicated herein, references to sections of the Bankruptcy Code shall refer to sections of title 11 of the United States Code.

(h) "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court as is administering the Bankruptcy Case.

(i) "Bankruptcy Rule" means a rule contained in the Federal Rules of Bankruptcy Procedure, as amended, but only as applicable to the Bankruptcy Case.

(j) "California Coverage Litigation" means the civil action against Aviva relating to the Aviva Policies, which was originally commenced in the Superior Court of the State of California in and for the City and County of San Francisco, but removed to the United States District Court for the Northern District of California, and styled <u>The Flintkote Company v. General Accident Assurance Company of Canada, et al.</u>, Case No. C 04-01827 MHP.

(k) "Claim" means

1.  "Claim" as that term is defined in the Bankruptcy Code, 11 U.S.C. § 101(5);

2.  Demand (as hereafter defined); and

3.  Any claim (whether past, present, or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, direct or indirect, matured or unmatured, liquidated or unliquidated, consequential, or assigned, and whether in law, equity, admiralty or otherwise), assertion of right, complaint, cross-complaint, counterclaim, affirmative defense, writ, demand, inquiry, request, suit, lawsuit, action, promise, right (including a right of subrogation, indemnification, or contribution), direct action, cause of action, administrative or regulatory proceeding or obligation, governmental action, order, judgment, settlement, mediation, arbitration, lien, loss, cost, or expense, and any other assertion of liability of any kind or subject matter whatsoever (whether arising from, related to, and/or in connection with asbestos or not). For the avoidance of doubt,

"Claim" includes, among other things and without limitation, (a) Asbestos Personal Injury Claims, (b) any claim arising out of, related to, involving, resulting from, or attributable to asbestos or any other substance, product, matter, or material in any form or state, or any cumulative, continuing, or other injury or damage, (c) any alleged bad faith, conspiracy, or extra-contractual or tort liability, or any alleged compensatory, punitive, exemplary, or statutory damages or penalties based upon any allegation of bad faith, unfair claim practice, unfair trade practice, deceptive trade practice, fraud, or misrepresentation, or other act or failure to act, (d) any alleged liability or obligation to pay damages, indemnity, investigation, or defense obligations, insurance premiums (whether retrospectively rated or otherwise), deductibles, self-insured retentions, costs, or expenses, (e) any alleged liability or obligation owed pursuant to or under a contract, other agreement, promise, representation, or warranty, and (f) any alleged liability or obligation at some past, present, or future time to inspect, monitor, contain, abate, or remove asbestos-containing materials from building(s) or other property(ies) or on account of the alleged loss of value of building(s) or other property(ies), or of alleged damages to the interruption of or interference with business or activities being carried on therein due to their alleged containing of asbestos-containing materials, or to otherwise respond on account of the presence of asbestos-containing materials therein for which one or both of the Flintkote Companies or any of their predecessors, is to be held responsible, including, but not limited to, all claims, debts, obligations, or liabilities for compensatory damages (such as, without limitation, proximate, consequential, general, and special damages) and punitive damages.

(l) "Committee" shall mean the Official Committee of Asbestos Personal Injury Claimants appointed in the Bankruptcy Case.

(m) "Confirmation Hearing" means the hearing scheduled in the Bankruptcy Case in which the Bankruptcy Court will consider confirmation of the Plan, as such hearing may be continued as contemplated in the Settlement Agreement or otherwise.

(n) "Confirmation Order" means a Final Order (as defined in the Plan) of the District Court either (1) exercising its original bankruptcy jurisdiction, confirming the Plan pursuant to 11 U.S.C. § 1129 and other applicable sections of the Bankruptcy Code or (2) exercising its original or appellate bankruptcy jurisdiction, affirming (a) an order of the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1129 and other applicable sections of the Bankruptcy Code or (b) a recommendation by the Bankruptcy Court that the Plan be confirmed by the District Court.

(o) "Coverage Litigation" means both the California Coverage Litigation and the Ontario Coverage Litigation.

(p) "Demand" means a demand against one or both of the Flintkote Companies, as "demand" is used and defined in section 524(g)(5) of the Bankruptcy Code, including a demand for payment, present or future, that (a) was not a Claim prior to the Effective Date, (b) arises out of the same or similar conduct or events that gave rise to an Asbestos Personal Injury Claim, and (c) pursuant to the Plan, is to be satisfied by the Trust.

(q) "District Court" means the United States District Court for the District of Delaware, or the unit thereof having jurisdiction over the Bankruptcy Case.

(r) "Entity" means any Person, estate, trust, local, state, or federal governmental body, unit or agency, or the United States Trustee.

(s) "Escrow Account" means the account held by the Escrow Agent pursuant to the Escrow Agreement.

(t) "Escrow Agent" shall have the meaning ascribed to such term in the Escrow Agreement.

(u) "Escrow Agreement" means that certain agreement, as may be subsequently modified or amended, entered into by and among Flintkote, Aviva, and the Escrow Agent, a copy of which is attached hereto as Attachment B.

(v) "Execution Date" means the last date on which this Settlement Agreement was executed by the Parties and signed by the FCR and the Committee to indicate their consent to the Settlement Agreement.

(w) "FCR" shall mean the Future Claimants Representative appointed by the Bankruptcy Court in the Bankruptcy Case.

(x) "Final Order" means (except with regard to Section I(n) herein) (i) a final, non-appealable order or judgment of any court of competent jurisdiction (or any revision, modification, or amendment thereof) or (ii) an order or judgment of any court of competent jurisdiction (or any revision, modification, or amendment thereof), the implementation, operation, or effect of which is not stayed, regardless of whether a timely appeal or petition for review, reconsideration, rehearing, reargument, or certiorari has been filed. The finality of any order under this definition shall not be determined by the availability of relief under Bankruptcy Rule 9024 or F. R. Civ. P. 60(b).

(y) "Final Sale-Approval Order Date" means the date on which the Sale-Approval Order becomes a Final Order.

(z) "Flintkote" means The Flintkote Company.

(aa) "Flintkote Companies" means Flintkote and Flintkote Mines Limited, as debtors and debtors-in-possession, and each of their respective bankruptcy estates.

(bb) "Known Aviva Policies" means the following Aviva Policies:  L. 90-5010, issued by The General Accident Assurance Company of Canada; C.L. 2037 issued by General Accident Fire & Life Assurance Corporation Limited of Perth, Scotland, and General Accident Fire and Life Assurance Corporation Limited; L. 6265 issued by General Accident Fire and Life Assurance Corporation Limited of Perth, Scotland, General Accident Fire & Life Assurance Corporation Limited of Perth, Scotland, and/or The General Accident Fire and Life Assurance Corporation Limited; and L. 90-4672 issued by The General Accident Assurance Company of Canada.  The term "Known Aviva Policies" shall specifically not include the London Policies.

(cc) "London Policies" means those certain insurance policies issued or subscribed by Lloyd's and Certain London Market Companies, including but not limited to the following policy numbers: 547620118RM, 547620119RM, 547620120RM, 47/620173RM 547/620174RM,  47/620175RM, 47/620243RM, 47/620242RM, 47/620241RM, 47/620244RM.

(dd) "Ontario Coverage Litigation" means the action in the Superior Court of Justice for Ontario, Canada, seeking declaratory relief regarding coverage under the Aviva Policies, styled Aviva Insurance Company Limited, et al. v. Genstar Stone Products, Inc., The Flintkote Company, Court File No. 04-CV-267616CM3.

(ee) "Parties" means Flintkote, Flintkote Mines Limited, and Aviva.

(ff) "Person" means "person" as that term is set forth in the Bankruptcy Code, 11 U.S.C. § 101(41);

(gg) "Plan" means the Amended Joint Plan of Reorganization in Respect of The Flintkote Company and Flintkote Mines Limited (As Modified), filed on July 20, 2009 by the Plan Proponents (as defined in the Plan) in the Bankruptcy Case, as it may be amended or otherwise modified from time to time.

(hh) "Protective Injunctions" means the permanent injunctions to be issued by the District Court pursuant to Section 524(g) of the Bankruptcy Code if the Plan is confirmed, including without limitation the Third Party Injunction provided in the Plan in respect of Settling Asbestos Insurance Companies and the Insurance Entity Injunction.

(ii) "Releasees" shall mean (a) Aviva, its predecessors, parents, subsidiaries, and divisions, and (b) direct or indirect subsidiaries of Aviva's ultimate parent company, Aviva plc, as of May 14, 2010. Notwithstanding the foregoing, the term "Releasees" shall expressly not include Commercial Union Assurance Company, plc, or its assigns or successors-in-interest with respect to any rights and obligations arising out of, under or from the London Policies.

(jj) "Releasors" shall mean (a) the Flintkote Companies and their respective (i) past or present subsidiaries and (ii) to the fullest extent of the Flintkote Companies' right and power to release claims on their behalf, the Flintkote Companies' officers, directors, employees, agents, representatives, shareholders, and attorneys, and (b) the Trust.

(kk) "Sale-Approval Order" means an order of the Bankruptcy Court approving this Settlement Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and the sale by

the Flintkote Companies to Aviva of the Known Aviva Policies pursuant to Sections 363 and 105 of the Bankruptcy Code, in substantially the same form as <u>Attachment A</u> hereto, or as may be modified by agreement of the Parties subject to Section XII of this Settlement Agreement.

(ll) "Trust" means an asbestos settlement trust for the benefit of Asbestos Claimants against the Flintkote Companies, as more fully described in the Plan.

## II. CONDITIONS TO EFFECTIVENESS OF THE SETTLEMENT AGREEMENT

This Settlement Agreement and the releases contained herein shall become effective only upon the occurrence of all of the following conditions precedent: (1) execution of this Settlement Agreement by the Parties, (2) execution of the respective consents to the Settlement Agreement by the Committee and the FCR, and (3) occurrence of the Final Sale-Approval Order Date; <u>provided, however</u>, that the terms of Sections III, IV, V, VIII, IX, XIV and XV of this Settlement Agreement shall become effective on the Execution Date.

## III. PAYMENT OF THE SETTLEMENT AMOUNT BY AVIVA

A.  Payment.

1.  On or before the close of business on May 25, 2010, Aviva shall have placed $150 million in United States Dollars (the "Settlement Amount") into an interest-bearing bank or money market account number CRJF00150002 at CIBC Mellon Bank (the "Account").

2. Within five (5) business days after the Execution Date, Aviva will pay the Settlement Amount, plus any interest accrued in the Account net of any fees or expenses related to the establishment of the Account, into the Escrow Account.

3. Within five (5) business days after Aviva receives written notice from the Flintkote Companies or, if formed, the Trust that the Final Sale-Approval Order Date has occurred, provided that the Final Sale Approval Order Date has actually occurred, the Parties shall jointly direct the Escrow Agent to transfer the funds in the Escrow Account to Flintkote (the "Settlement Payment") – which transfer shall be free and clear of any obligation to return said Settlement Payment – and Flintkote shall be obligated within five (5) business days thereafter to contribute the Settlement Payment to either (a) the Qualified Settlement Fund established by Flintkote, pursuant to the Bankruptcy Court's July 13, 2005 order [Docket No. 954], under Section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulations Section 1.468B-1 or (b) if formed, the Trust; provided, however, that Flintkote shall be authorized to transfer or retain any funds as necessary to satisfy Section III.B.1(b) of this Settlement Agreement.

B. Additional Provisions Relating to the Settlement Payment.

1. The Settlement Payment shall be used only for the payment of (a) Asbestos Personal Injury Claims, including any administrative expenses of the Qualified Settlement Fund or the Trust, and (b) Allowed Amounts of Unsecured Claims against the Debtors.

2. Aviva shall have no liability or responsibility for any allocation of the Settlement Payment among any of the Asbestos Claimants or their respective attorneys.

3. The Settlement Payment shall be allocated on Aviva's books at Aviva's sole discretion.

4. The Settlement Payment shall not be subject to any deductions or charge-backs by Aviva of any kind, including, without limitation, claims of recoupment or deductibles, self-insured retentions, or retrospective or reinstatement premiums under the Aviva Policies.

5. Aviva shall not seek reimbursement of any payments Aviva is obligated to make under this Settlement Agreement, or of any other payments Aviva has made to or for the benefit of the Flintkote Companies or the Trust, whether by way of a claim for contribution, indemnity, or subrogation or otherwise, from any Person, including any other insurer of the Flintkote Companies. Notwithstanding the foregoing, if a third party pursues a Claim for contribution, indemnity, subrogation, or otherwise against Aviva under, arising out of, related to, and/or in connection with the subject matter of this Settlement Agreement, then Aviva shall be free to pursue such a Claim against such third party. To the extent Aviva recovers contribution, indemnity, or subrogation or otherwise against such third party, the proceeds thereof (net of recovery by such other party against Aviva under the Aviva Policies and after reimbursement of Aviva for its fees, costs, and expenses incurred in prosecuting and defending such contribution claim) shall be

distributed promptly to Flintkote or the Trust, if formed, or as may otherwise be directed by the Bankruptcy Court in the Bankruptcy Case.

## IV. BANKRUPTCY OBLIGATIONS

A. As part of the Bankruptcy Case, the Flintkote Companies will seek confirmation of the Plan by the Bankruptcy Court. In connection with such Plan, the Flintkote Companies, the Committee, and the FCR shall use their best efforts (i) to obtain, pursuant to 11 U.S.C. §§ 524(g) or 105, issuance by the Bankruptcy Court and affirmance by the District Court, or issuance by the District Court, of the Confirmation Order granting and approving the Protective Injunctions and (ii) to provide Aviva with all of the benefits of the protection against all Asbestos Personal Injury Claims by any Person or Entity that is provided to Settling Asbestos Insurance Companies under the Protective Injunctions.

B. Within five (5) business days after the Execution Date, or as soon thereafter as possible, the Flintkote Companies will, at their sole cost and expense, file the Approval Motion and seek entry of the Sale-Approval Order. The Sale-Approval Order shall provide, among other things:

1.    That the Settlement Agreement is approved in its entirety, and that the Flintkote Companies are authorized to take all actions necessary to implement the terms of the Settlement Agreement;

2.    That, upon receipt of the Settlement Payment by Flintkote or the Trust, the Flintkote Companies shall be deemed to have sold, conveyed, assigned, transferred, and delivered to Aviva, and Aviva shall be deemed to have purchased from the Flintkote Companies, the Known Aviva Policies free and clear of any

and all liens, encumbrances, and/or interests of any kind or nature whatsoever, under Section 363(f) of the Bankruptcy Code, and that Aviva shall be entitled to the protections of Section 363(m) of the Bankruptcy Code;

3. For an injunction, pursuant to §§ 105(a) and 363 of the Bankruptcy Code, enjoining all Persons and Entities on notice of the Approval Motion (including Persons on notice through a court-appointed representative including the FCR) who have held or asserted, who hold or assert, or who may in the future hold or assert a Claim or interest (including, without limitation, an Asbestos Personal Injury Claim) against any of the Known Aviva Policies, whenever or wherever arising or asserted (including all thereof in the nature of or sounding in tort, contract, warranty or any other theory of law, equity or admiralty), from continuing, commencing, or otherwise proceeding or taking any action against Aviva with respect to such Claims or interests for the purpose of collecting, recovering, or receiving payments from Aviva; and

4. That the Reorganized Debtors and the Trust, upon the Effective Date, shall be bound by the Settlement Agreement as if they had been parties thereto as of the Execution Date.

C. The Parties shall use their best efforts to see that the Sale-Approval Order is entered and becomes a Final Order. If the Sale-Approval Order has been entered by the Bankruptcy Court, but has not become a Final Order by August 26, 2010, the Parties shall promptly meet and confer regarding the options available to facilitate final court approval of the settlement contained in this Settlement Agreement, while preserving each Party's rights and positions with respect to confirmation of the Plan. The Parties will consider options including, but not limited

to, modifications to the terms of the standstill described in Section IV.E below and/or appropriate amendments to the Plan.

D. At Aviva's option, it may publish notice of the Approval Motion. Aviva and the Flintkote Companies shall agree on the scope and frequency of the notice to be given. Aviva shall pay the costs of any broader notice given in addition to that required by Bankruptcy Rule 2002. If notice of the Approval Motion is published, the Approval Motion shall seek approval by the Bankruptcy Court of the adequacy of the content and scope of the publication notice. If the Bankruptcy Court determines that the content of the publication notice for the Approval Motion was not adequate, the Flintkote Companies will bear the cost of republishing the original notice, up to the cost of the original notice, and Aviva will bear the cost of any additional or supplemental notice.

E. From and after the Execution Date until the Final Sale-Approval Order Date, (a) the Flintkote Companies and Aviva will cease all litigation activities pertaining to each other in the Bankruptcy Case that in any way directly or indirectly relates to Aviva's opposition to confirmation of the Plan, (b) the Flintkote Companies and Aviva will not conduct discovery in the Bankruptcy Case or file papers in the Bankruptcy Case which would require a direct response from the other, and (c) Aviva will not in any way, directly or indirectly, assist any other Person or Entity in opposing confirmation of the Plan, all except as necessary to comply with deadlines established by the Bankruptcy Court and/or applicable law or rules of procedure, and/or as necessary to defend their interests in their respective sole judgment with respect to any matter brought by a Person or Entity that is not a Party to this Settlement Agreement. To the extent possible, the Parties shall grant each other extensions of time and/or continuances so that they need not engage in further litigation activity.

F. From and after the Final Sale-Approval Order Date, Aviva shall withdraw and be deemed hereby to have withdrawn with prejudice any and all (a) Claims made in the Bankruptcy Case against the Flintkote Companies or the Flintkote Companies' estates, (b) arguments or positions in opposition to confirmation of the Plan, and (c) requests for discovery in the Bankruptcy Case, and shall thereafter continue to not in any way, directly or indirectly, assist any other Person or Entity in opposing confirmation of the Plan.

G. The Flintkote Companies and Aviva shall cooperate in good faith to see that the Sale-Approval Order is entered and becomes a Final Order.

H. The Trust shall, upon its creation, succeed to all of the rights and be bound by all of the obligations of the Flintkote Companies under this Settlement Agreement as if the Trust were a "Party" to the Settlement Agreement as of the Execution Date; provided, however, that the release provisions of Section VI below shall be binding on and inure to the benefit of all of the Flintkote Companies, the Trust, and Aviva. It is the intent of the Parties that the Trust shall have no rights or claims against Aviva with respect to the Aviva Policies following receipt of the Settlement Payment by Flintkote or, if formed, the Trust.

I. If, before the Final Sale-Approval Order Date, any Person asserts any Claim against Aviva that is released in this Settlement Agreement, the Flintkote Companies will, at their own expense, use best efforts to obtain an order from the Bankruptcy Court pursuant to Section 105(a) of the Bankruptcy Code enjoining or otherwise prohibiting the prosecution of any such Claim against Aviva.

J. Following receipt of the Settlement Payment by Flintkote or, if formed, the Trust, if any Person asserts against Aviva any Claim that is either (i) subject to the permanent

injunction(s) contained in the Sale-Approval Order or (if applicable) the Protective Injunctions, or (ii) based upon or forms the basis of any Asbestos Personal Injury Claims, then the Trust, if it has been established (or the Flintkote Companies, if the Trust has not been established) will, at its or their own expense, defend (i) the validity of the permanent injunction contained in the Sale-Approval Order and (if applicable) the Protective Injunctions and the application of such injunction(s) to Aviva, and will expend reasonable best efforts to establish that such Claim is enjoined as to Aviva and (ii) Aviva from having any liability for Asbestos Personal Injury Claims under the Aviva Policies, in light of the release of Aviva from all Asbestos Personal Injury Claims under the Aviva Policies pursuant to this Settlement Agreement and any order approving the Settlement Agreement, as applicable; provided, however, that both the Flintkote Companies and the Trust combined shall not be obligated to expend any more than $100,000 in the aggregate with respect to all such efforts. Aviva shall cooperate with the Flintkote Companies and the Trust in their efforts to obtain such relief.

K. The Flintkote Companies agree to reduce any judgment that they may obtain against any other Person who obtains a judgment against Aviva under, arising from, related to, or in connection with the Aviva Policies with respect to any liability under the Aviva Policies that is released under this Settlement Agreement, by the amount of such other Person's judgment against Aviva, the purpose being to ensure that Aviva does not become obligated to pay more than the Settlement Payment with respect to Claims released in this Settlement Agreement. The Flintkote Companies or the Trust, as the case may be, shall cooperate with Aviva in any litigation against Aviva seeking contribution, indemnification, or other similar payments with respect to any liability under, arising from, related to, or in connection with any of the Aviva Policies that is released under this Settlement Agreement, and shall support arguments made by

Aviva that Aviva's obligations with respect to such Claims have been fully released, satisfied, and extinguished by this Settlement Agreement and the Sale-Approval Order, and this reduction of judgment may be relied upon by Aviva as a defense in any such litigation. If and when Aviva becomes a protected party under the Protective Injunctions, the foregoing judgment reductions shall not in any way be inconsistent with the judgment reduction provisions of the Protective Injunctions, and to the extent there are any inconsistencies, the judgment reduction provisions of the Protective Injunctions shall govern.

L. Flintkote shall, within five (5) days after entry of the Sale-Approval Order, file in the Bankruptcy Case a plan modification or other appropriate document (1) designating Aviva as a Settling Asbestos Insurance Company (as such term is defined in the Plan) and (2) designating the Settlement Agreement as an Asbestos Insurance Settlement Agreement (as such term is defined in the Plan), subject in each case to Flintkote or, if formed, the Trust receiving payment of the Settlement Payment.

## V. PENDING COVERAGE LITIGATION

A. Promptly after the Execution Date, counsel for the Flintkote Companies and Aviva shall file a stipulation seeking a stay of all activity in the California Coverage Litigation until after the Final Sale-Approval Order Date, subject to the terms of the termination provisions set forth in Section XV herein.

B. Within five (5) business days after the receipt of the Settlement Payment by Flintkote or, if formed, the Trust: (a) Flintkote will dismiss, with prejudice, the entire California Coverage Litigation; (b) Aviva will also dismiss, with prejudice, the entire California Coverage Litigation; and (c) Aviva shall also dismiss with prejudice the entire Ontario Coverage

Litigation. After the dismissal with prejudice of the California Coverage Litigation, Aviva and

Flintkote will perform their obligations under the protective order and other confidentiality

agreements in the California Coverage Litigation and the Bankruptcy Case by, *inter alia*,

returning and/or destroying (at the producing party's option) confidential materials. The

dismissal orders for the California Coverage Litigation and the Ontario Coverage Litigation shall

be substantially in the form of Attachments C and D hereto, respectively.

## VI. TERMINATION OF POLICY RIGHTS, POLICY BUYBACK, AND MUTUAL RELEASES

A. Automatically upon actual receipt of the Settlement Payment by Flintkote or, if

formed, the Trust, and without need for any further action by any Party, the Releasors shall

irrevocably fully, finally, and forever release, and shall be deemed to have fully, finally, and

forever released, the Releasees from the following:

1. any and all Claims for insurance coverage and/or other obligations

under the Aviva Policies that arise from, relate to, or are in connection with

Asbestos Personal Injury Claims;

2. any and all Claims of any kind under, arising out of, related to, or in

connection with the Known Aviva Policies, including, without limitation, Claims

for insurance coverage, whether such Claims are known or unknown, suspected,

claimed or alleged, fixed or contingent, including, without limitation, Claims for

any past, present, pending, and future duties, obligations, damages, demands,

actions, lawsuits, causes of action, payments, adjustments, executions, offsets,

setoffs, costs, fees, defenses, debts, sums of money, accounts, reckonings, bills,

bonds, covenants, contracts, controversies, agreements, promises, expenses, deductibles, retentions, premiums, accountings, interest charges, judgments, suits, liabilities, any alleged breach of the duty of good faith and fair dealing, unfair claims practices, unfair trade practices, bad faith, actual or constructive fraud, misrepresentation, insurer misconduct, misfeasance and/or malfeasance, violations of any statute (other than criminal violations), regulation or code, any other type of extra-contractual liability or alleged wrongdoing;

       3. any and all Claims, whether known or unknown, suspected, claimed or alleged, fixed or contingent, arising from, related to, or in connection with the making, drafting, negotiation or execution of this Settlement Agreement; and

       4. any and all Claims or matters arising from, related to, or in connection with the California Coverage Litigation and the Ontario Coverage Litigation, including, without limitation, any claims for payment of costs and expenses, court-imposed expenses, and expert fees.

B. Effective immediately upon the receipt of the Settlement Payment by Flintkote or, if formed, the Trust, and without any further action being required, the Known Aviva Policies, and any and all of the Flintkote Companies' rights and interests in the Known Aviva Policies, shall be deemed to have been sold back to Aviva pursuant to Sections 363(b) and (f) of the Bankruptcy Code free and clear of any liens, claims and/or interests, within the meaning of Sections 363(b)(1) and (f) of the Bankruptcy Code, to the fullest extent permissible under the Bankruptcy Code and any other applicable law, fully and finally extinguishing all rights, duties and coverage under the Known Aviva Policies and, as a result, to the fullest extent permitted by

law, the Known Aviva Policies shall no longer remain in effect. For the avoidance of doubt, Aviva's buyback of the Known Aviva Policies shall operate as if Aviva had never issued the Known Aviva Policies and therefore was never required to have any dealings with, or actual or alleged duties or obligations whatsoever to, any of the Releasors or any Person allegedly harmed or injured by the Flintkote Companies.

C. Automatically upon actual receipt of the Settlement Payment by Flintkote or, if formed, the Trust, and without need for any further action by any Party, the Releasees shall irrevocably fully, finally, and forever release, and shall be deemed to have fully, finally, and forever released (a) the Flintkote Companies and their respective (i) past or present subsidiaries, and (ii) officers, directors, employees, agents, representatives, shareholders, and attorneys; and (b) the Trust from:

1. any and all Claims, whether known or unknown, suspected, claimed or alleged, fixed or contingent, arising from or relating to (i) the Aviva Policies (including, without limitation, any prior settlement discussions, claim handling, bad faith, conduct, interaction or lack of interaction between the Parties in connection with, relating to or arising out of the Known Aviva Policies); or (ii) the making, drafting, negotiation or execution of this Settlement Agreement;

2. any and all Claims or matters arising from or related to, or in connection with the California Coverage Litigation and/or the Ontario Coverage Litigation, including, without limitation, any claims for payment of costs and expenses, court-imposed expenses, and expert fees; and

3. any right of Aviva to recover the Settlement Payment.

D. Nothing in this Section VI shall apply to, impair, or affect the Parties' rights and obligations set forth in this Settlement Agreement or to enforce the terms of this Settlement Agreement.

E. Notwithstanding anything else in this Settlement Agreement, with respect to the Aviva Policies other than the Known Aviva Policies, the Releasees shall not be released from Claims for insurance coverage that arise from, relate to, or are in connection with Claims other than Asbestos Personal Injury Claims, including, but not limited to, Claims that arise from, relate to, or are in connection with any property loss, cost, expense, or damage and/or any environmental loss, cost, expense, or damage.

F. Notwithstanding any other provision of this Settlement Agreement, nothing in this Settlement Agreement shall release Aviva or any other Person or Entity from any liability under the London Policies, or any insurance policies issued or acquired by Aviva after May 14, 2010.

## VII. RIGHTS OF THIRD PARTIES

A. Nothing contained herein is or shall be deemed an admission or representation by Aviva (1) that the Flintkote Companies were or are, or any other Person or Entity was or is, entitled to any insurance coverage under any of the Aviva Policies, (2) as to the validity of any of the positions that have been or could have been asserted by the Flintkote Companies, or (3) of any liability whatsoever with respect to Asbestos Personal Injury Claims or other Claims or Demands. In entering into this Settlement Agreement, no Party has waived, nor shall be deemed to have waived, modified, or retracted, any rights, obligations, privileges, or positions it has asserted or might in the future assert in connection with any Claim or Demand, matter, insurance policy, Person or Entity other than as set forth in this Settlement Agreement.

B. Except as expressly provided in this Settlement Agreement, the Parties specifically disavow any intention to create rights for third parties under or in relation to this Settlement Agreement.

C. It is the intent of the Parties pursuant to this Settlement Agreement, the consideration provided by the Settlement Payment, and the actions contemplated by the Parties and courts herein, to provide protection to the Releasees from any and all Asbestos Personal Injury Claims against the Flintkote Companies under the Aviva Policies, now and in the future, to the greatest extent permitted by law.

## VIII. REPRESENTATIONS AND WARRANTIES

A. Aviva represents and warrants to the Flintkote Companies and the Trust (as applicable) that Aviva has conducted a diligent, good faith search and that this search has not disclosed any commercial general liability insurance policies, other than the Known Aviva Policies, nor has Aviva found any other evidence of such insurance for which Aviva is financially responsible that would be subject to the release or extinguishment provisions in this Settlement Agreement.

B. The Flintkote Companies represent and warrant to Aviva that they have conducted a diligent, good faith search and that they are not aware of any commercial general liability insurance policies issued to the Flintkote Companies by Aviva other than the Known Aviva Policies, nor has Flintkote found any other evidence of such insurance for which Aviva is financially responsible that would be subject to the release or extinguishment provisions in this Settlement Agreement.

C. The Flintkote Companies represent and warrant to Aviva that they have full corporate authority, subject to entry of the Sale-Approval Order by the Bankruptcy Court, to execute this Settlement Agreement as a binding and legal obligation of the Flintkote Companies. The persons signing this Settlement Agreement on behalf of the Flintkote Companies represent and warrant that they are authorized by the Flintkote Companies to execute this Settlement Agreement as a binding and legal obligation of the Flintkote Companies (subject to Bankruptcy Court approval).

D. Aviva represents and warrants to the Flintkote Companies that Aviva has full corporate authority to execute this Settlement Agreement as a binding and legal obligation of Aviva. The person signing this Settlement Agreement on behalf of Aviva represents and warrants that he or she is authorized by Aviva to execute this Settlement Agreement as a binding and legal obligation of Aviva on whose behalf he or she has executed the Settlement Agreement.

## IX. CONFIDENTIALITY

Upon full execution of the Settlement Agreement by the Parties, any Party shall be free to disclose the Settlement Agreement and its terms to any Person or Entity and in any forum, including at any hearing in the Bankruptcy Case. The negotiations leading to this Settlement Agreement are within the protection of California Evidence Code Section 1119 (which protects the confidentiality of mediation-related communications and writings) as well as the protection afforded compromises and offers of compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court; however, the Parties hereby waive any such privileges to the extent necessary to either (i) help the Parties obtain the approval of the settlement embodied in this Settlement Agreement or (ii) aid with the interpretation of this

Settlement Agreement by a court or other dispute resolution tribunal, if the Parties disagree over the interpretation of a provision of the Settlement Agreement. The Parties agree that they will not disclose or use any information regarding the negotiations leading to this Settlement Agreement, except as such disclosure or use may (i) help the Parties obtain the approval of the settlement embodied in this Settlement Agreement or (ii) aid the Parties in the implementation and/or enforcement of this Settlement Agreement.

## X. NO PREJUDICE AND CONSTRUCTION OF AGREEMENT

This Settlement Agreement is the product of informed negotiations, including negotiations under the guidance of a mediator, and involves compromises of the Parties' previously stated legal positions. Accordingly, this Settlement Agreement does not reflect the Parties' views as to their rights and obligations with respect to matters or Entities outside the scope of this Settlement Agreement. This Settlement Agreement is without prejudice to positions taken by Aviva with regard to other policyholders or by Flintkote with regard to other insurers. This Settlement Agreement is the jointly-drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. As such, no Party will claim that this Settlement Agreement shall be strictly or presumptively construed against any other Party by reason of the identity of the drafter or the identity of the other Party as an insurance company, or otherwise.

## XI. ENTIRE AGREEMENT AND TERM; WAIVER OF UNKNOWN CLAIMS

A. This Settlement Agreement, including the attachments hereto, expresses the entire agreement and understanding between Aviva and the Flintkote Companies and specifically supersedes the Term Sheet executed by the Parties on or about May 14, 2010. Except as

expressly set forth in this Settlement Agreement, there are no representations, warranties, promises, or inducements, whether oral, written, expressed, or implied, that in any way affect or condition the validity of this Settlement Agreement or alter its terms. Except for the representations and warranties of Section VIII, if the facts or law related to the subject matter of this Settlement Agreement are found hereafter to be other than as is now believed by either of the Parties, the Parties expressly accept and assume the risk of such possible difference of fact or law and agree that this Settlement Agreement nonetheless shall be and remain effective according to its terms. Notwithstanding anything else in this Settlement Agreement, the Parties have not and shall not be deemed to have waived any claims arising out of the representations and warranties contained in Section VIII herein.

B. The Parties understand and acknowledge that (1) Claims that have been or may be asserted against the Flintkote Companies may increase or decrease in amount or severity over time and may include progressive, cumulative, unknown, and/or unforeseen elements and (2) there may be hidden, unknown, and unknowable damages, defense expenses, or other costs related to such Claims. Each of the Parties acknowledges and agrees that it nevertheless willingly enters into this Settlement Agreement, including the releases set forth in Section VI. Likewise, each of the Parties expressly assumes the risk that Claims, acts, omissions, matters, causes, or other facts or things arising out of, related to, and/or in connection with the Known Aviva Policies may have occurred that one or more Parties do not know or suspect to exist, and the Parties expressly assume the risk of new or additional facts, Claims, or legal theories, or subsequent legal developments, that were not known and could not be anticipated on the Execution Date. To the fullest extent permitted by law, each of the Parties waives, with respect to the Claims released in this Settlement Agreement with respect to the Known Aviva Policies,

the terms and provisions of any statute, rule, or doctrine of common law that either (i) narrowly construes releases purporting by their terms to release Claims in whole or part under, arising out of, related to, and/or in connection with such acts, omissions, matters, causes, or things, or (ii) restricts the releasing of such Claims.

C. **WAIVER OF UNKNOWN CLAIMS. THE PARTIES ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED BY THEIR ATTORNEYS CONCERNING, AND ARE FAMILIAR WITH, CALIFORNIA CIVIL CODE SECTION 1542 AND EXPRESSLY WAIVE ANY AND ALL RIGHTS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH PROVIDES THAT "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR," AND UNDER ANY OTHER FEDERAL OR STATE STATUTE OR LAW OF SIMILAR EFFECT. THE PARTIES EXPRESSLY ASSUME THE RISK THAT ACTS, OMISSIONS, MATTERS, CAUSES, OR THINGS MAY HAVE OCCURRED THAT THEY DO NOT KNOW OR DO NOT SUSPECT TO EXIST.**

D. Titles and captions contained in this Settlement Agreement are inserted only as a matter of convenience and are for reference purposes only. Such titles and captions are intended in no way to define, limit, expand, or describe the scope of this Settlement Agreement or the intent of any other provision hereof.

## XII. NO MODIFICATION

No change or modification of this Settlement Agreement shall be valid unless it is made in writing and signed by all of the Parties to this Settlement Agreement, with the consent of the Committee and the FCR and, if required, the approval of the Bankruptcy Court.

## XIII. EXECUTION

This Settlement Agreement shall be executed in two (2) counterparts, each of which shall be deemed an original and both of which shall constitute one and the same instrument. Aviva shall deliver one duly executed counterpart to Flintkote, and the Flintkote Companies shall deliver one duly executed counterpart to Aviva. Each counterpart may be delivered by facsimile transmission or e-mail, to be followed by transmission of a manually signed original, and a faxed or e-mailed signature shall have the same force and effect as an original signature. A faxed or e-mailed signature from the Committee and the FCR shall be sufficient for the purposes hereof.

## XIV. NOTICES

Any and all statements, communications, or notices to be provided pursuant to this Settlement Agreement shall be in writing and sent by facsimile or e-mail and by first-class mail, postage prepaid. Such notices shall be sent to the individuals noted below, or to such other individuals as such Party may designate in writing from time to time:

For the Flintkote Companies:

Eric Bower
The Flintkote Company
Two Embarcadero Center, Suite 410
San Francisco CA 94111
Fax: 415-989-5045
E-mail: ebower@sftfc.com

With a copy to:

Marc Maister
Irell & Manella LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660-6324
Fax: 949-760-5200
E-mail: mmaister@irell.com

With a copy to:

Kevin T. Lantry
Sidley Austin LLP
555 West Fifth Street, Ste. 4000
Los Angeles, CA 90013
Fax: (213) 896-6600
E-Mail: klantry@sidley.com

Asbestos Claimants Committee:
Joseph D. Frank
Frank/Gecker LLP
325 North LaSalle Street, Suite 625
Chicago, IL 60654
Fax: (312) 276-0035
E-Mail: jfrank@fgllp.com

With a copy to:

Elihu Inselbuch
Caplin & Drysdale, Chartered
375 Park Avenue
New York, NY 10152
Fax: (212) 644-6755
E-Mail: ei@capdale.com

Future Claimants Representative:
William Pohlman
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus OH 43216-1008
Fax: 614-464-6350
E-Mail: wjpohlman@vssp.com

For Aviva:
Karin Ots
Senior Vice President, Injury & Casualty Claims
Aviva Canada, Inc.
2206 Eglington Avenue East
Scarborough, ON  M1L 4S8
CANADA
Fax: (416) 288-5092
E-Mail: karin_ots@avivacanada.com

With a copy to:
Mark D. Plevin and Leslie A. Davis
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Fax: (202) 628-5116
E-Mail:  mplevin@crowell.com, ldavis@crowell.com

With a copy to:
Jesse F. Ruiz
Robinson & Wood, Inc.,
227 North First Street
San Jose, CA  95113
Fax:  (408) 298-0477
E-Mail:  jfr@robinsonwood.com

## XV.  FAILURE OF CONDITIONS PRECEDENT

If the Sale-Approval Order has not become a Final Order within six months of the

Execution Date, both Aviva and the Flintkote Companies will have the right, following at least

one in-person meet-and-confer session to be held within two weeks after six months have passed

since the Execution Date, to terminate the Settlement Agreement effective immediately.  If the

Settlement Agreement is so terminated, the Parties shall jointly direct that any money contained in the Escrow Account be disbursed to Aviva, any stay then in effect in the California Coverage Litigation shall terminate, and the Parties shall return to the status quo ante as it existed as of May 14, 2010 (with all litigation deadlines to be reset as appropriate).

## XVI. MISCELLANEOUS

A. This Settlement Agreement was reviewed by independent legal counsel for the Flintkote Companies and Aviva before it was signed. The Flintkote Companies and Aviva each (i) entered into this Settlement Agreement after consulting with counsel and (ii) have a full understanding of the contents and consequences of this Settlement Agreement.

B. The Flintkote Companies and Aviva each acknowledge that no Party, nor any corporate affiliate of any of them, has been unduly pressured to accept this settlement. No promise or inducement which is not herein expressed has been made to any Party or corporate affiliate of any Party.

C. In executing this Settlement Agreement, the Flintkote Companies and Aviva acknowledge that they are not relying, nor have they relied, upon any statement or representation made by or on behalf of the other Party, or by any agent, attorney, or employee of the other Party, concerning the Aviva Policies, the disputes surrounding the coverage (if any) provided by the Aviva Policies, the Bankruptcy Case, the Asbestos Personal Injury Claims, or this Settlement Agreement, other than the representations and warranties set forth herein.

D. The invalidity or unenforceability of any particular provision in this Settlement Agreement shall not affect the validity or enforceability of any other provision in this Settlement

Agreement; provided, however, that the provisions in this Settlement Agreement regarding the Settlement Payment, Section IV.B.2, Section IV.B.3, Section IV.B.4, Section VIII, and the effectiveness of the releases shall not be severable from this Settlement Agreement.

E.  The Parties agree to do such further acts and execute such further documents as they agree may be necessary or desirable to carry out the intent and purpose of this Settlement Agreement.

F.  Each Party expressly agrees that it shall bear its own costs and attorneys' fees, if any, with respect to the Coverage Litigation and/or the drafting and negotiation of this Settlement Agreement.

G.  By executing this Settlement Agreement, the Flintkote Companies expressly represent, warrant, and affirm that they have not made, and will not in the future make, any assignment or transfer of any claim against Aviva released by this Settlement Agreement to any Person or Entity except the Trust upon its formation.

H.  This Settlement Agreement is not a contract of insurance, and the Parties agree that any special rules of interpretation or construction of contracts of insurance including, without limitation, the doctrine of *contra proferentum*, shall not apply.

I.  Nothing in this Settlement Agreement, or any actions taken by the Parties in connection with the negotiation and execution of this Settlement Agreement, constitutes an admission or concession by any Party on any issue, including the alleged existence of coverage for the Flintkote Companies under any of the Aviva Policies.

## XVII. GOVERNING LAW/VENUE.

This Settlement Agreement shall be governed by, and construed in accordance with, the

substantive law of the State of California, without giving effect to any conflicts of law rule or

principle that might require the application of the law of another jurisdiction. Any disputes

between the parties regarding any matter involving this Settlement Agreement shall be resolved

by the Bankruptcy Court.

**IN WITNESS WHEREOF**, this Settlement Agreement, has been read and signed by the

duly authorized representatives of the Parties on the dates set forth below.

THE FLINTKOTE COMPANY

Dated: June 11, 2010            By: _Eric Bower_
                                    Eric Bower
                                    Executive Vice President and Chief
                                    Financial Officer of The Flintkote
                                    Company


FLINTKOTE MINES LIMITED

Dated: June 11, 2010            By: _____
                                    David Gordon
                                    President of Flintkote Mines Limited


AVIVA INSURANCE COMPANY OF
CANADA

Dated: June  , 2010             By: _____
                                    Maurice Tulloch
                                    President & CEO Aviva Canada Inc.

I am co-chair of the Official Committee of Asbestos Personal Injury Claimants, and have represented to the Flintkote Companies and Aviva that the Committee consents to the Settlement Agreement and all of the terms and conditions contained therein.

By:

Dated: June // , 2010

I am the Future Claimants Representative, and have represented to Flintkote and Aviva that I consent to the Settlement Agreement and all of the terms and conditions contained therein.

By: _____

Dated: June 11, 2010

## FORM OF SALE-APPROVAL ORDER

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE FLINTKOTE COMPANY and | ) | Case No. 04-11300 (JKF) |
| FLINTKOTE MINES LIMITED, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

## ORDER APPROVING SETTLEMENT AGREEMENT AND RELEASE
## BY AND BETWEEN THE FLINTKOTE COMPANIES AND
## AVIVA INSURANCE COMPANY OF CANADA

Having heard and considered the "Debtors' Motion for Order Approving Settlement

Agreement with Aviva Insurance Company of Canada" (the "Motion"), including the

"Settlement Agreement and Release by and between The Flintkote Companies and Aviva

Insurance Company of Canada" (the "Settlement Agreement"), which is attached as an exhibit to

the Motion, any objection(s) to the Motion, and any evidence and argument submitted in support

of or in opposition to the Motion; and after due deliberation and sufficient cause appearing

therefor; the Court hereby makes the following findings of fact and conclusions of law.

## I.    FINDINGS OF FACT

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    Due and adequate notice of the Motion and of the hearing on the Motion was

given by mailing a copy of the Motion and notice of the hearing on the Motion to: (i) counsel for

the Committee;[1] (ii) counsel for the FCR; (iii) all other persons and entities that, as of the date

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion and the Settlement Agreement.

the Motion was filed, had filed a notice of appearance or other demand for service of process in the Bankruptcy Case; (iv) counsel to Debtors' insurers, including Aviva; (v) the United States Trustee; and (vi) counsel to persons who, as of the date of the filing of the Motion, were known to Debtors to have represented persons who asserted Asbestos Personal Injury Claims against one or both of the Debtors. In addition, further due and adequate notice of the Motion and of the hearing on the Motion was provided by Debtors' having published notice of the Motion and of the hearing on the Motion at least 21 days before the hearing, in the form attached as Exhibit 3 to the Motion, at least once in each of the following publications: The Wall Street Journal; USA Today; the Chicago Tribune; the St. Louis Post-Dispatch; The New York Times; the Los Angeles Times; the San Francisco Chronicle; The Dallas Morning News; the Houston Chronicle; The Philadelphia Inquirer-Daily News; and The Washington Post, and at least 14 days before the hearing, in the form attached as Exhibit 3 to the Motion, at least once in Mealey's Asbestos Litigation Reporter.

B.      Notice of the Settlement Agreement, the Motion, and the hearing on the Motion and an opportunity to be heard is sufficient to bind (1) the members of the Committee, (2) all parties-in-interest, (3) the FCR and all future claimants and Demand holders whose interests are represented by the FCR, (4) all other persons and entities who, as of the date the Motion was filed, had filed a notice of appearance or other demand for service of process in the Bankruptcy Case, (5) Debtors' insurers, including Aviva, (6) the United States Trustee, (7) persons who, as of the date the Motion was filed, were represented by counsel to whom Debtors mailed notice of the Motion and the hearing on the Motion, and (8) all persons who were properly notified by Debtors' publication of notice as described in paragraph A of this Order.

C. This Order and each of its Findings and Conclusions are binding upon (1) the Reorganized Debtors and the Trust, as if they had been parties to the Settlement Agreement as of the Execution Date, (2) the members of the Committee, (3) all parties-in-interest, (4) the FCR and all future claimants and Demand holders whose interests are represented by the FCR, (5) all other persons and entities who, as of the date the Motion was filed, had filed a notice of appearance or other demand for service of process in the Bankruptcy Case, (6) Debtors' insurers, including Aviva, (7) the United States Trustee, (8) persons who, as of the date the Motion was filed, were represented by counsel to whom Debtors mailed notice of the Motion and the hearing on the Motion, and (9) all persons who were properly notified by Debtors' publication of notice as described in paragraph A of this Order.

D. The Settlement Agreement is the product of arms' length, good faith negotiations by and between (i) Flintkote and Flintkote Mines Limited (collectively, the "Debtors") and (ii) Aviva.

E. The Parties have agreed that the Settlement Payment shall be used only for the payment of (a) Asbestos Personal Injury Claims, including any administrative expenses of the Qualified Settlement Fund or the Trust, and (b) Allowed Amounts of Unsecured Claims against the Debtors.

F. The Known Aviva Policies are being sold to and transferred to Aviva free and clear of all Claims and interests in the Known Aviva Policies held by any Person and free and clear of all Claims by any Person that could give rise to a claim for defense, indemnity, or insurance coverage under the Known Aviva Policies, all of which Claims and interests shall attach to the Settlement Payment.

G.    Aviva is a good-faith purchaser of the Known Aviva Policies under Section 363(m) of the Bankruptcy Code.

H.    In light of the uncertainty regarding the timing of recovery and collection in, and the complexity of, the Coverage Litigation, as well as the expense of continuing litigation, the payments and other benefits received under this Settlement Agreement by the Debtors and, if formed, the Trust, constitute a fair and reasonable settlement of the claims released and settled by the Debtors against Aviva.

I.    The Settlement Payment and other benefits conveyed under the Settlement Agreement to the Debtors constitute valuable and fair consideration and reasonably equivalent value for the benefits received by Aviva under the Settlement Agreement.

J.    Upon receipt of the Settlement Payment by Flintkote or, if formed, the Trust, holders of Claims, liens, interests, or any other encumbrances with respect to the Known Aviva Policies may only assert their rights, if at all, only against the Settlement Payment.

K.    The FCR has expressly consented to entry of this Order on behalf of Persons and Entities holding Demands.

L.    The relief sought in the Motion is in the best interests of the Debtors, their respective estates, and their respective creditors.

M.    The legal and factual bases set forth in the Motion and at the hearing on the Motion establish just cause for granting the relief sought in the Motion.

## II.    CONCLUSIONS OF LAW

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is GRANTED in its entirety, and all objections to the Motion are overruled.

4

2.      The Settlement Agreement and its terms are approved in all respects.

3.      The Settlement Agreement is binding on all the Parties thereto and, upon the Effective Date, the Reorganized Debtors and the Trust, as if the Reorganized Debtors and the Trust had been parties to the Settlement Agreement as of the Execution Date.

4.      The Debtors are hereby authorized and empowered to take all necessary acts to carry out and implement the Settlement Agreement in accordance with the terms and conditions thereof.

5.      The Debtors are authorized to execute any other documentation and perform such other ministerial tasks as may be necessary to effect the Settlement Agreement.

6.      The releases given under the Settlement Agreement are approved, and the Releasors are authorized to release the Releasees pursuant to the terms of the Settlement Agreement.

7.      As set forth in the Settlement Agreement, actual receipt of the Settlement Payment by Flintkote or, if formed, the Trust, shall (a) terminate any and all obligations whatsoever of Aviva to the Debtors arising under or relating to the Known Aviva Policies, and bar any further Claims or requests for coverage under any and all coverages of the Known Aviva Policies that might be made by the Debtors or the Trust, and, without limiting the foregoing, shall (b) terminate any and all obligations whatsoever of Aviva to the Debtors related to Asbestos Personal Injury Claims arising under or related to the Aviva Policies, and bar any further Asbestos Personal Injury Claims or requests for coverage with respect to Asbestos Personal Injury Claims under any and all coverages of the Aviva Policies that might be made by the Debtors or the Trust.

8.      As set forth in the Settlement Agreement, actual receipt of the Settlement Payment by Flintkote or, if formed, the Trust, shall constitute a purchase by Aviva from the Debtors of any and all of the Debtors' rights and interests in the Known Aviva Policies, free and clear of any liens, claims and/or interests, within the meaning of Sections 363(b)(1) and (f) of the Bankruptcy Code, to the fullest extent permissible under the Bankruptcy Code and any other applicable law.  Accordingly, without the need for any further action, all rights, title and interest in the Known Aviva Policies shall be conveyed, assigned, and transferred to Aviva upon actual receipt of the Settlement Payment by Flintkote or, if formed, the Trust.

9.      **Pursuant to Sections 105 and 363 of the Bankruptcy Code and subject to receipt of the Settlement Payment by Flintkote or, if formed, the Trust, all Persons and Entities who have held or asserted, who hold or assert, or who may in the future hold or assert a Claim or interest (including, without limitation, an Asbestos Personal Injury Claim) against any of the Known Aviva Policies (each, an "Enjoined Claim"), whenever or wherever arising or asserted (including all thereof in the nature of or sounding in tort, contract, warranty or any other theory of law, equity or admiralty), shall be and hereby are permanently stayed, restrained, and enjoined from asserting any such Enjoined Claims against Aviva and from continuing, commencing, or otherwise proceeding or taking any action against Aviva to enforce such Enjoined Claims, or for the purpose of directly or indirectly collecting, recovering or receiving payments from Aviva to recover with respect to any such Enjoined Claims.  For the avoidance of doubt, (a) neither the Debtors nor the Trust is stayed, restrained, or enjoined from asserting any Claims that are not released in Section VI of the Settlement Agreement; and (b) Aviva may assert any and all defenses,**

**Claims, interests, rights and remedies to or relating to any Claims that are not stayed, restrained, or enjoined.**

10.     This Order shall not limit or preclude the entry or effectiveness of any injunction(s) that may be granted in connection with, or as part of, any order confirming the Plan, including, without limitation, any injunction that may be provided to Aviva with respect to rights of contribution, subrogation, reimbursement, indemnification, or similar claim that any other insurer may have or may in the future have against Aviva.

11.     The Trust, upon its creation, shall be bound to the terms of the Settlement Agreement as if it had been a Party thereto as of the Execution Date thereof.

12.     Flintkote shall, within five (5) days after entry of this Order, file in the Bankruptcy Case a plan modification or other appropriate document (a) designating Aviva as a Settling Asbestos Insurance Company (as such term is defined in the Plan) and (b) designating the Settlement Agreement as an Asbestos Insurance Settlement Agreement  (as such term is defined in the Plan), subject in each case to Flintkote or, if formed, the Trust receiving payment of the Settlement Payment.

13.     This Order shall not afford any relief between the Parties greater than that provided in the Settlement Agreement or otherwise inconsistent with that provided in the Settlement Agreement.

14.     This Court shall retain exclusive jurisdiction to decide any dispute arising under or related to, or any action brought to enforce the terms of, the Settlement Agreement.

Wilmington, Delaware
Dated: _____

_____
The Honorable Judith K. Fitzgerald
United States Bankruptcy Judge

7

**ATTACHMENT B**

**ESCROW AGREEMENT**

**ATTACHMENT C**

**CALIFORNIA COVERAGE LITIGATION DISMISSAL FORM**

1  IRELL & MANELLA LLP
   Marc S. Maister (SBN 155980; mmaister@irell.com)
2  Laura A. Seigle (SBN 171358; lseigle@irell.com)
   Michael Fehner (SBN 207312; mfehner@irell.com)
3  840 Newport Center Drive, Suite 400
   Newport Beach, CA 92660-6324
4  Telephone: (949) 760-0991
   Facsimile: (949) 760-5200
5
   Attorneys for Plaintiff
6  The Flintkote Company

7  ROBINSON & WOOD, INC.
   Archie S. Robinson (SBN 34789; ASR@robinsonwood.com)
8  Jesse F. Ruiz (SBN 77984; JFR@robinsonwood.com)
   Bonnie Margaret Ross (SBN 178591; BMR@robinsonwood.com)
9  Helen H. Chen (SBN 213150; HHC@robinsonwood.com)
   227 North First Street
10 San Jose, CA 95113
   Telephone: (408) 298-7120
11 Facsimile: (408) 298-0477

12 Attorneys for Defendant
   Aviva Insurance Company of Canada
13

14                    UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                      SAN FRANCISCO DIVISION

17

18 THE FLINTKOTE COMPANY, a Delaware        )  Case No. C 04-01827 MHP
   corporation,                            )
19                                          )  **STIPULATION OF DISMISSAL WITH**
                 Plaintiff,                 )  **PREJUDICE**
20                                          )
          vs.                               )  **[Proposed Order submitted separately]**
21                                          )
   GENERAL ACCIDENT ASSURANCE              )
22 COMPANY OF CANADA, a Canada             )
   insurance company; GENERAL ACCIDENT     )
23 FIRE AND LIFE ASSURANCE                  )
   CORPORATION LIMITED OF PERTH,           )
24 SCOTLAND, a Scotland insurance company;  )
   and DOES ONE through TEN,               )
25                                          )
                 Defendants.                )
26                                          )
                                            )
27

28

|     |                                                                                                      |
| --- | ---------------------------------------------------------------------------------------------------- |
| 1   | Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), plaintiff the Flintkote                  |
| 2   | Company ("Flintkote") and defendant Aviva Insurance Company of Canada ("Aviva") hereby               |
| 3   | stipulate and agree as follows:                                                                       |
| 4   | Whereas Flintkote commenced the instant action against Aviva in the Superior Court of the            |
| 5   | State of California in and for the City and County of San Francisco on April 14, 2004, which was     |
| 6   | subsequently removed to this Court;                                                                   |
| 7   | Whereas Aviva answered Flintkote's complaint on October 1, 2004;                                     |
| 8   | Whereas all the parties to this action have negotiated a resolution of the claims in this            |
| 9   | action:                                                                                               |
| 10  | NOW THEREFORE, IT IS HEREBY STIPULATED, pursuant to Federal Rule of Civil                            |
| 11  | Procedure 41(a)(1)(A)(ii), by and among the parties hereto, through their respective counsel, that   |
| 12  | this action shall be dismissed in its entirety with prejudice pursuant to the Settlement Agreement   |
| 13  | with leave to reinstate if the Settlement Agreement is voided for any reason, each party to bear its |
| 14  | own costs and expenses, including attorneys' fees.                                                    |
| 15  | IT IS SO STIPULATED.                                                                                  |
| 16  |                                                                                                      |
| 17  | Counsel for both parties affix their electronic signatures below to this Stipulation of              |
| 18  | Dismissal With Prejudice.                                                                             |
| 19  |                                                                                                      |
| 20  | Respectfully submitted,                                                                               |
| 21  | Dated: _____ ___, 2010        IRELL & MANELLA LLP                                                 |
| 22  |                                                                                                      |
| 23  |                                                                                                      |
| 24  | By:  /s/ Marc S. Maister                                                                             |
| 25  |      Marc S. Maister                                                                                  |
|     |      Attorneys for Plaintiff                                                                          |
| 26  |      The Flintkote Company                                                                            |
| 27  |                                                                                                      |
| 28  |                                                                                                      |

1 | Dated: _____, 2010                    ROBINSON & WOOD, INC.

2

3

4                                             By: /s/ Jesse F. Ruiz
                                                  _____

5                                                 Jesse F. Ruiz
                                                  Attorneys for Defendant
6                                                 Aviva Insurance Company of Canada

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12   THE FLINTKOTE COMPANY, a Delaware      )    Case No. C 04-01827 MHP
     corporation,                           )
13                                          )    **[PROPOSED] ORDER OF DISMISSAL**
                    Plaintiff,              )    **WITH PREJUDICE**
14                                          )
            vs.                             )    **[Joint Stipulation Submitted Separately]**
15                                          )
     GENERAL ACCIDENT ASSURANCE             )
16   COMPANY OF CANADA, a Canada            )
     insurance company; GENERAL ACCIDENT    )
17   FIRE AND LIFE ASSURANCE                )
     CORPORATION LIMITED OF PERTH,          )
18   SCOTLAND, a Scotland insurance company;)
     and DOES ONE through TEN,              )
19                                          )
                    Defendants.             )
20                                          )

21

22

23

24

25

26

27

28

                                                     [PROPOSED] ORDER OF DISMISSAL

                                                        (Case No. C 04-01827 MHP)

# ORDER

Pursuant to the parties' Joint Stipulation of Dismissal with Prejudice, and pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), this action shall be dismissed in its entirety with prejudice pursuant to the Settlement Agreement with leave to reinstate if the Settlement Agreement is voided for any reason, each party to bear its own costs and expenses, including attorneys' fees.

IT IS SO ORDERED.

Dated: _____, 2010

_____
Judge Marilyn Hall Patel
United States District Judge

# ATTACHMENT D

# ONTARIO COVERAGE LITIGATION DISMISSAL FORM

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE

B E T W E E N :

### AVIVA INSURANCE COMPANY LIMITED, and GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION LIMITED

Plaintiffs

- and -

### GENSTAR STONE PRODUCTS INC. THE FLINTKOTE COMPANY

Defendant

### CONSENT

THE PARTIES hereto by their lawyers hereby consent to an order dismissing this action without costs and certify that the order being consented to does not affect the rights of any person under disability.

Date:_____

_____

**STIEBER BERLACH LLP**
900 - 130 Adelaide Street West
Toronto, ON  M5H 3P5

STEVEN STIEBER  LSUC#: 13317W
Tel: (416) 366-1400
Fax: (416) 366-1466

Lawyers for the Plaintiffs

Date:_____

**LENCZNER SLAGHT ROYCE SMITH GRIFFIN LLP**
2600 - 130 Adelaide Street West
Toronto, ON  M5H 3P5

Glenn Smith  LSUC#: 15777O
Tel: (416) 865-9500
Fax: (416) 366-1466

Lawyers for the Defendants, Redlands Genstar Inc. (improperly styled as Genstar Stone Products Inc.)

Date:_____

**BLAKE, CASSELS & GRAYDON LLP**
Barristers & Solicitors
Box 23, Commercial Court West
Toronto, Ontario M5L 1A9

Mary Jane Stitt    LSUC#:22238M
Tel: (416) 863-2940
Fax: (416) 863-2653

Lawyers for the Defendant The Flintkote Company

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Toronto

**CONSENT TO DISMISSAL**

**STIEBER BERLACH LLP**
900 - 130 Adelaide Street West
Toronto, ON  M5H 3P5

STEVEN STIEBER  LSUC#: 13317W
Tel: (416) 366-1400
Fax: (416) 366-1466

Lawyers for the Plaintiffs

### *ONTARIO*
## SUPERIOR COURT OF JUSTICE

MASTER                    )         DAY , THE
                                )
                                )    DAY OF _____, 2010

B E T W E E N:

## AVIVA INSURANCE COMPANY LIMITED, and GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION LIMITED

Plaintiffs

- and -

## GENSTAR STONE PRODUCTS INC. THE FLINTKOTE COMPANY

Defendant

### ORDER

**THIS MOTION** made by the Plaintiffs for an Order dismissing the within claim without costs was read this day at the City of Toronto.

**ON READING** the consent, filed:

1.     **THIS COURT ORDERS** that the within claim be and the same is hereby dismissed without costs.

_____

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at Toronto

**ORDER**

**STIEBER BERLACH LLP**
900 - 130 Adelaide Street West
Toronto, ON  M5H 3P5

STEVEN STIEBER  LSUC#: 13317W
Tel: (416) 366-1400
Fax: (416) 366-1466

Lawyers for the Plaintiffs