IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE FLINTKOTE COMPANY and | ) | Case No. 04-11300 (JKF) |
| FLINTKOTE MINES LIMITED, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Hearing Date: July 14, 2010 at 9:15 a.m. (Wilmington, DE) |
| | ) | Related to Docket Nos. 5097, 5099, 5114, 5155 |
| | ) | |

## PLAN PROPONENTS' REPLY TO ITCAN'S OBJECTION TO DEBTORS' MOTION FOR ORDER APPROVING SETTLEMENT WITH AVIVA INSURANCE COMPANY OF CANADA

The Debtors,[1] the Asbestos Claimants Committee, and the Future Claimants Representative (collectively, the "Plan Proponents") hereby submit this response (the "Reply") to the objection (the "Objection") filed by Imperial Tobacco Canada Limited ("ITCAN") [D.I. 5155] to Debtors' Motion for Order Approving Settlement with Aviva Insurance Company of Canada (the "Motion") [D.I. 5097].

The Settlement Agreement with Aviva represents a dramatic turn in the Debtors' path to confirmation. The Settlement Agreement provides for the near-doubling of liquid assets immediately available for distribution to creditors. The Settlement Agreement also represents a complete resolution of one of the two principal pieces of non-bankruptcy litigation fought by the Debtors during these proceedings, which have required a sizable allocation of estate resources and attention from the Debtors' principals and attorneys. Finally, the Settlement Agreement resolves the objections of one of the two fiercest opponents to confirmation of the Debtors' Plan. The importance of this settlement is underscored by the attention it has received from the official representatives of the Debtors' creditors. Unlike any prior insurance settlement in these

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

proceedings, the separate bankruptcy and insurance counsel for both the Asbestos Claimants Committee and the Future Claimants Representative (involving four different law firms) *directly* participated in the extensive negotiations and formal mediations leading to the Settlement Agreement before the Court. The mediation process, under the direction of Daniel Weinstein, a retired California Superior Court Judge, was lengthy and complex, taking place on numerous occasions over a period of several years.

ITCAN has identified nothing wrong with either the terms of the Settlement Agreement or the process leading to its execution. Rather, through burdensome eleventh hour discovery, ITCAN seeks to jeopardize the value of this Settlement Agreement to the Debtors' estates. ITCAN has no standing to question the Plan Proponents' amply-supported and hard-fought settlement; it is neither a creditor of these estates, nor a co-insured under the Aviva Policies. Nor is ITCAN entitled to any discovery, because the Court has before it all the evidence necessary to approve the Settlement Agreement. ITCAN's continued back-door attempts to derail the Debtors' reorganization should be rejected.

## I. ITCAN LACKS STANDING TO OBJECT TO THE SETTLEMENT.

1. The Aviva Policies provide insurance coverage only to the Debtors. The Aviva Policies were purchased by the Debtors in the late 1950's. Flintkote was not acquired by Genstar Corporation (believed to be a subsidiary of ITCAN) until 1979, nearly twenty years later, and ITCAN did not acquire Genstar until 1986. Unlike certain other later-acquired insurance policies, as to which Flintkote has acknowledged Genstar's rights as a co-insured, Genstar is not a named insured under any of the Aviva Policies. ITCAN and Genstar have no insurance coverage under, or any other rights or interests in, the Aviva Policies.

2. ITCAN bears the burden of proof to establish its own standing to object to the Motion. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). ITCAN has provided no evidence in connection with its Objection to support its standing to obstruct the Settlement Agreement.

3. Even though the court-appointed representatives for the Debtors' creditors participated in negotiating and crafting the Settlement Agreement, ITCAN clothes its Objection in concern for the best interests of creditors. ITCAN is not a creditor. It has not filed a claim in this case. This Court has already ruled that ITCAN is not a creditor and thus lacks standing to take discovery and object to confirmation on best interests grounds under section 1129(a)(7). See Order on Summary Judgment [D.I. 4814] at 2 ("[t]he Motion is GRANTED with respect to Imperial Tobacco Canada Limited's lack of standing to maintain objections and pursue discovery regarding the Plan's compliance with Bankruptcy Code section 1129(a)(7)[.]"). ITCAN has no greater rights here to assert the rights of a creditor to object to this settlement. See Krys v. Official Comm. of Unsecured Creditors (In re Refco Inc.), 505 F.3d 109, 117 (2d Cir. 2007) ("To the extent that the rights of a party in interest are asserted, those rights must be asserted by the party in interest, not someone else.").

4. This Court has also ruled in the context of a sale of property under section 363 that ITCAN lacked standing to seek discovery on or object to the Debtors' business judgment. That decision, which squarely addresses the issues presented by the Motion, illustrates why ITCAN has no standing to propound discovery or second-guess the Debtors' business judgment under Bankruptcy Rule 9019.

5. In 2008, this Court authorized Flintkote's purchase and leaseback of certain real property (the "363 Order") [D.I. 3495]. In connection with its objection to those transactions,

3

ITCAN sought voluminous discovery in order to challenge the reasonableness of Flintkote's decision. This Court ruled that ITCAN had no standing to question Flintkote's business judgment in using estate property and that therefore ITCAN was "not entitled to any § 363 Discovery . . . from any party." [D.I. 3487] at 2. Like the proposed real estate transactions, this Settlement Agreement provides for the sale and buyback of the Known Aviva Policies under section 363. Like the estate property at issue in the real estate transactions, ITCAN has no particularized interest in the Aviva Policies. The conclusion that ITCAN has no standing to question Flintkote's business judgment therefore also applies here.

## II. THE DEBTORS HAVE PROVIDED PRIMA FACIE, UNCONTESTED EVIDENCE SATISFYING RULE 9019.

6. For purposes of evaluating whether the Settlement Agreement should be approved, the Court need only canvass the issues and determine that the settlement is fair and equitable, reasonable, and in the best interests of the Debtors' estates. See, e.g., In re TSIC, Inc., 393 B.R. 71, 79 (Bankr. D. Del. 2008). To make this determination, the Court must consider the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay...; and (4) the paramount interest of the creditors." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996). In evaluating the Martin factors, existing precedent makes clear that the Court should only examine the Settlement Agreement for purposes of determining whether it "falls below the lowest point in the range of reasonableness" – the Court should not conduct a full blown trial or even a "'mini-trial' on the merits." See, e.g., In re Key3Media Group, Inc., 336 B.R. 87, 93 (Bankr. D. Del. 2005); In re Cellular Info. Sys., 171 B.R. 926, 948 (Bankr. S.D.N.Y. 1994) ("The Supreme Court could not have intended that, in order to avoid a trial, the judge must in effect conduct one.").

7. This Court can and should approve the Settlement Agreement on the basis of the record before the Court:

- Even if Flintkote prevailed in the Coverage Litigation, the timing, collection, and amount of any ultimate judgment in Flintkote's favor, which would result from an extended jury trial, is uncertain. (Bay Decl. ¶ 6).

- Aviva has announced its intention over the past several years that, if it could not reach a settlement with the Debtors, it would appeal any unfavorable factual or legal findings made by the district court in the Coverage Litigation. See Disclosure Statement Regarding Amended Joint Plan of Reorganization in Respect of The Flintkote Company and Flintkote Mines Limited [D.I. 3629] at 32.

- The Settlement Agreement (i) provides for a substantial and immediate payment from Aviva, (ii) resolves one of the principal remaining confirmation disputes in this bankruptcy case, and (iii) avoids the further expenditure of Debtors' valuable time and resources in continuing to pursue the Coverage Litigation, which Flintkote has been pursuing for over six years at considerable expense. (Bay Decl. ¶ 6).

- The Asbestos Claimants Committee (which represents in excess of 99% of current creditors in these chapter 11 cases) and the Futures Representative have fully engaged in the settlement negotiations among the Debtors and Aviva and fully support the Settlement Agreement. (Bay Decl. ¶ 5, 8).

- The Debtors and Aviva engaged in numerous rounds of extensive mediation (including six formal mediation sessions before a former San Francisco Superior Court judge) over the course of the Coverage Litigation. (Bay Decl. ¶ 5).

This undisputed evidence demonstrates that the Debtors and the other Plan Proponents have fully weighed the merits of the Settlement Agreement and have presented a *prima facie* case that the Settlement Agreement meets the Martin standard.

8. The discovery being sought by ITCAN (even assuming it has standing, which it does not) is not necessary here because bankruptcy courts need not conduct full evidentiary hearings or consider voluminous evidence in order to canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. "It is clear that Rule 9019(a) itself does not expressly obligate the court to hold an evidentiary hearing prior to approving a compromise under Rule 9019(a)." DePoister v. Mary M. Holloway Found., 36 F.3d

582, 586 (7th Cir. 1994); see In re NW Investors II, LLC, 2007 U.S. Dist. LEXIS 58791, *16-17 (E.D.N.Y. July 30, 2007) (finding bankruptcy court's consideration of the papers and legal argument sufficient for the purposes of Rule 9019). In evaluating the relevant factors, "[t]he Court may give weight to the opinions of the Trustee, the parties, and their attorneys, and may consider the principals' belief that the relevant factors have been considered and that the settlement is fair and reasonable." Id. at *12. "The lenient standards concerning approval of settlements and a limited scope of review reflect the considered judgment that little would be saved by the settlement process if bankruptcy courts could approve settlements only after an exhaustive investigation and determination of the underlying claims." In re Purofied Down Prods. Corp., 150 B.R. 519, 522-23 (S.D.N.Y. 1993).

9. Even if ITCAN had standing to oppose the Motion, no evidentiary hearing is necessary because ITCAN has neither controverted the Debtors' evidence, nor presented any evidence that undermines the Debtors' *prima facie* case. ITCAN deliberately and tactically chose to ignore the Coverage Litigation, but now raises its own supposed ignorance as a barrier to approval of the settlement. Essentially, ITCAN asks this Court to put ITCAN's feigned uncertainty regarding the reasonableness of the Settlement Agreement above (i) the business judgment of the Debtors and the creditor representatives, as well as the judgment of their myriad attorneys who have been involved in the Coverage Litigation since its inception; and (ii) the opinion of Judge Weinstein, who has presided over numerous and extended mediation sessions among the parties. However, "[o]nce there is a showing that the settlement should be approved, the burden then shifts to the objecting party who cannot oppose the settlement by merely demanding more proof." In re Del Rosso, 106 B.R. 165, 168 (Bankr. N.D. Ill. 1989). As the Del Rosso court explained, "[t]o allow the objectors to disrupt the settlement on the basis of nothing

more than their unsupported suppositions would completely thwart the settlement process." Id. (quotation marks omitted). This Court should similarly reject ITCAN's attempt to disrupt this settlement.

### III. ITCAN HAS REQUESTED DISCOVERY FOR AN IMPROPER PURPOSE.

10. Both ITCAN's feigned concern and its plea of insufficient information ring hollow. As demonstrated by its own exhibits, ITCAN is perfectly able through PACER to access the information contained in over 500 docket entries in the Coverage Litigation.

11. Moreover, ITCAN was served with the Motion nearly 30 days before ITCAN propounded discovery. ITCAN could have noticed a deposition or propounded discovery following its receipt of the Motion. Instead, it purposely sat on its hands until five days before the hearing date, in order to buttress its contention that it needed more time to assess the settlement and ultimately further its goal of delaying the Debtors' efforts to successfully reorganize. The fact is ITCAN made no attempt to depose or request written discovery from the Debtors regarding the Settlement Agreement until after ITCAN filed its Objection.

12. As discussed further above, the information sought by ITCAN's overreaching and burdensome discovery request is unnecessary to this Court's evaluation of the Settlement Agreement. ITCAN literally seeks to discover every presently available fact about each of the tens of thousands of asbestos claims asserted against Flintkote over the past thirty-five years, together with every scrap of extant information about all insurance[2] that covered or might have covered those claims. See Notice of Deposition [D.I. 5157]; ITCAN's First Set of Interrogatories and Requests for Production of Documents, attached as Exhibit A hereto. ITCAN wants to probe the universe of facts bearing on Flintkote's key assets and liabilities

---

[2] In Exhibit B-9 to its Schedules, Flintkote listed twenty-two single-spaced pages' worth of insurance policies. See [D.I. 68-6].

7

across the years – and that is, of course, the essence of the state court fraudulent conveyance litigation. In short, the proposed discovery seeks information ITCAN would likely use to fight the dividend recovery claims Flintkote has brought against ITCAN in state court, where ITCAN will probably seek the same discovery in the future, in accordance with the schedule set by the judge hearing that case. This is neither the time nor the place for ITCAN's fishing expedition.

13. The gamesmanship displayed by ITCAN's proposed discovery makes clear the true purpose of ITCAN'S Objection: to derail confirmation of Debtors' Plan. ITCAN does not need the discovery it seeks to assess whether the Settlement Agreement is reasonable, even if it had standing to be heard. ITCAN wants the discovery to delay the payment of $150,000,000 in cash to the estates and to delay approval of the Settlement Agreement in the hope that Aviva will eventually return to its side as a plan opponent. ITCAN's continued attempts to deprive the Debtors of a successful reorganization should be rejected.

## CONCLUSION

WHEREFORE, the Plan Proponents respectfully request that the Court grant the relief in the Motion.

Dated: Wilmington, Delaware
July 12, 2010

Respectfully submitted,

SIDLEY AUSTIN LLP
Kevin T. Lantry
Jeffrey E. Bjork
Christina M. Craige
555 West Fifth Street, Suite 4000
Los Angeles, California 90013-6000
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

-and-

PACHULSKI, STANG, ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for Debtors and Debtors-in-Possession

Dated: Wilmington, Delaware
July 12, 2010

Respectfully submitted,

VORYS, SATER, SEYMOUR & PEASE LLP
Reginald W. Jackson, Esq.
52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008
Telephone: (614) 464-5621
Facsimile: (614) 719-4778

VORYS, SATER, SEYMOUR & PEASE LLP
John W. Read, Esq.
2100 One Cleveland Center
1375 East 9th Street
Cleveland, Ohio 44114
Telephone: (216) 479-6103
Facsimile: (216) 937-3737

-and-

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Edwin J. Harron
James L. Patton, Jr., Esq.
Edwin J. Harron, Esq.
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to the Future Claimants' Representative

Dated: Wilmington, Delaware
July 12, 2010

Respectfully submitted,

CAPLIN & DRYSDALE, CHARTERED
Elihu Inselbuch, Esq.
375 Park Avenue
New York, NY 10022
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

CAPLIN & DRYSDALE, CHARTERED
Peter Van N. Lockwood, Esq.
Ronald E. Reinsel, Esq.
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

-and-

CAMPBELL & LEVINE, LLC

_/s/ Mark T. Hurford_
Mark T. Hurford (Bar No. 3299)
800 N. King Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 426-1900
Facsimile: (302) 426-9947

Counsel to the Asbestos Claimants' Committee

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE FLINTKOTE COMPANY and | ) | Case No. 04-11300 (JKF) |
| FLINTKOTE MINES LIMITED, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Re: Docket No. 5097 |

## IMPERIAL TOBACCO CANADA LIMITED'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS REGARDING DEBTORS' MOTION FOR ORDER APPROVING SETTLEMENT WITH AVIVA INSURANCE COMPANY OF CANADA

TO: Debtors The Flintkote Company and Flintkote Mines Limited, by and through their attorneys of record Laura Davis Jones, James E. O'Neill, and Scotta E. McFarland of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 and Kevin T. Lantry and Jeffrey E. Bjork of Sidley Austin LLP, 555 West Fifth Street, Suite 4000, Los Angeles, CA 90013-6000

Pursuant to Rules 7033, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, Imperial Tobacco Canada Limited ("ITCAN"), a party in interest in these Chapter 11 cases, hereby requests that within 30 days after service of these requests (or such other time as the Court may direct), debtors The Flintkote Company and Flintkote Mines Limited (1) serve written and verified responses to the below interrogatories and (2) serve written responses to the below document requests, and produce the items specified below for inspection, examination, and copying at the offices of Morris James LLP at 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801, or at such other place as the parties may mutually agree. All Documents shall be segregated and identified by category.

## DEFINITIONS AND INSTRUCTIONS

When used in these requests, including the preceding paragraphs, the following terms shall have the following meanings:

A. "ACC" means the Official Committee of Asbestos Personal Injury Claimants appointed in this Chapter 11 case by the U.S. Trustee, and its attorneys, agents, representatives, and all other persons acting or purporting to act on its behalf or at its direction or control, including but not limited to its attorneys, brokers, investment or financial advisors, actuarial consultants, and accountants.

B. "Aviva" means Aviva Insurance Company of Canada.

C. "Debtors" means Flintkote and Mines, collectively.

D. "Document" means and includes the original, or in lieu thereof a true, legible and exact copy, regardless of origin or location and whether or not in your physical possession, of any written, typed, printed, transcribed, taped, recorded, filmed, punched or graphic matter of any kind, type or nature whatsoever, however produced or reproduced, prepared by you or others, in the possession, custody or control of you, including, but not limited to, a letter or other correspondence, a telex, a telegram, an e-mail, a press release, a written communication, a check, a canceled check, a diary, a memorandum, notes, minutes, a report, a study, a calculation, a load ticket, a trip ticket, a weight ticket, a bill of lading, an invoice, a photograph, a drawing, a mark sheet, a draft, a spreadsheet or other data compilation (translated into reasonable usable form), and any other tangible thing. Any copy differing in any respect from an original shall be deemed herein to be a separate document. These requests specifically include Documents that are in your possession custody or control, including, without limitation, Documents held or maintained by your agents or representatives. Without limiting the foregoing, the term "Document" shall include electronically stored information in any medium.

E. "FCR" or "Future Claimants Representative" shall have the meaning ascribed to that term in the Plan.

F. "Flintkote" means The Flintkote Company and/or any of its officers, employees, agents and/or representatives.

G. "Mines" means Flintkote Mines Limited and/or any of its officers, employees, agents and/or representatives.

H. "Motion" means Debtors' Motion for an Order Approving Settlement with Aviva Insurance Company of Canada [D.I. 5097]. Any capitalized but undefined term set forth herein shall have the meaning set forth in the Motion.

I. "Person" means and includes an individual, a firm, a corporation, or any other entity as the context requires.

J. "Relating to" means directly or indirectly mentioning or describing, pertaining to, being connected with, constituting, concerning, embodying, comprising, reflecting, evidencing, identifying, stating, dealing with, commenting on, responding to, discussing, depicting, analyzing, interpreting or reflecting upon a stated subject matter.

K. "You" or "Your" and "you" or "your" shall refer to each of Flintkote and Mines, either collectively or independently.

L. If any Document or portions of a Document called for by a Request is withheld on the grounds of privilege or otherwise, then You shall provide a log with the following information relating to each Document or portion of a Document withheld:

    (a)    the kind of Document (*e.g.*, memorandum, letter, notes, etc.);

    (b)    the date of the Document, or if no date appears thereon, the approximate date the Document was prepared;

    (c)    the identity of the author;

    (d)    the identity of the person to whom the Document is addressed;

    (e)    the identity of any other recipients of the Document that appear on the Document as having received a copy (*e.g.*, as "cc" or "bcc");

(f) the identity of any attachments to the Documents and whether the attachments have been produced; and

(g) the claim of privilege providing the alleged grounds for withholding the Document (*e.g.*, attorney-client privilege, work product privilege, etc.).

M. "Identify" with respect to any Person or any reference to stating the "identity" of any "Person" means to provide the Person's full name and residence, business address, job title, business phone number, and a description of each such Person's connection to the events in question. If the Person being identified is a business, corporation, partnership, or other corporate entity, "identify" or any reference to stating the "identity" of the Person means to provide the entity's full name, address, and telephone number, the form of the business organization, along with the primary Person(s) employed or otherwise associated with such entity with whom you dealt concerning the events in question.

## INTERROGATORIES

1. Identify each person who participated in the preparation of the answers to these discovery requests.

2. Identify each person, including any proposed expert, that you may call to testify at any hearing on the Motion.

3. Identify each person who participated in the negotiation of the settlement agreement with Aviva described in the Motion (the "Settlement").

4. Provide the factual basis for any estimation or determination that you, or any experts or consultants retained by you or on your behalf, have made regarding the total damages incurred by the Debtors as a result of Aviva's refusal to provide coverage under the Known Aviva Policies, including, without limitation, the factual basis for the Debtors' assertion in the Coverage Litigation that their damages were approximately $284 million.

5. To the extent such an estimation or determination exists, provide an estimate of future asbestos liabilities that may be incurred by the Debtors, including any estimate of the extent to which any estimated future asbestos liabilities would be covered under the Known Aviva Policies.

6. Provide the factual basis for any estimations or determinations set forth in your answer to interrogatory No. 5.

7. Identify every settlement with any insurance carrier providing coverage for asbestos liabilities, and provide the amount of remaining insurance coverage under each settled policy and the amount of the settlement. For each such settled policy identify the insurer, policy number, policy period, per occurrence limits and underlying limits.

8. Identify every unexhausted and unsettled insurance policy that provides or allegedly provides coverage to the Debtors for asbestos personal injury claims. For each such policy identify the insurer, policy number, policy period, per occurrence limits and underlying limits.

9. Identify all asbestos claims, including settled, active and inactive claims, asserted against Flintkote and/or Mines including the date of filing, the date of first exposure (DOFE), the year of manifestation or death, defense costs paid for each claim including the date paid, indemnity paid for each claim including the date paid and the nature of the illness.

## DOCUMENT REQUESTS

1. All Documents related to or evidencing your responses to Interrogatory No. 4, including, without limitation, any Documents supporting or summarizing the Debtors' alleged damages in the Coverage Litigation.

2. All Documents related to or evidencing your responses to Interrogatories No. 5 and 6, including, without limitation, any Documents supporting or summarizing any analysis of the Debtor's estimated future liabilities, including any estimate or forecast of the amount for which the Debtors' believe that insurance coverage would be available under the Known Aviva Policies.

3. All Documents related to or evidencing your responses to Interrogatory No. 7, including, without limitation, any Documents memorializing, listing or summarizing any settlements identified in your responses to Interrogatory No. 7.

4. All Documents related to or evidencing your responses to the Interrogatory No. 8, including, without limitation, any Documents listing or summarizing insurance policies identified in your responses to Interrogatory No. 8.

5. All Documents related to or evidencing your response to Interrogatory No. 9, including, without limitation, the documents and data constituting Flintkote's claims database.

6. All Documents upon which you intend to rely at any hearing on the Motion.

7. All Documents that you have provided to or received from any proposed witness, including any proposed expert witness, that you may call to testify at any hearing on the Motion.

[The remainder of this page has been intentionally left blank.]

Dated: July 9, 2010

MORRIS JAMES LLP

_____
Stephen M. Miller (DE Bar No. 2610)
Eric J. Monzo (DE Bar No. 5214)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE 19899-2306
Telephone: (302) 888 -6800
Fax: (302) 571-1750
E-mail: smiller@morrisjames.com
emonzo@morrisjames.com

KING & SPALDING LLP
James A. Pardo, Jr.
Mark M. Maloney
1180 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Fax: (404) 572-5129
E-mail: jpardo@kslaw.com
mmaloney@kslaw.com

Counsel for Imperial Tobacco Canada Limited