# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE FLINTKOTE COMPANY and<br>FLINTKOTE MINES LIMITED,<br><br>Debtors. | Chapter 11<br><br>Case No. 04-11300 (JKF)<br>(Jointly Administered)<br><br>Hearing Date (in Wilmington, Delaware):<br>December 19, 2011 at 9:00 a.m. (Eastern)<br><br>Related to Docket Nos. 3593, 3768, 3816, 3839,<br>4045, 5902, 5950, 5973, 5986, 6088, 6239, 6240,<br>6241, 6291, 6292, 6316, 6317 |

## DEBTORS' REPLY TO 8 E. FREDERICK PLACE, LLC'S RESPONSES IN OPPOSITION TO DEBTORS' MOTIONS FOR SUMMARY JUDGMENT ON THE DEBTORS' OBJECTIONS TO CLAIM NO. 2242 AND MOTION FOR RELIEF FROM STAY FILED BY 8 EAST FREDERICK PLACE, LLC

The Flintkote Company ("Flintkote") and Flintkote Mines Limited ("Mines"), the debtors and debtors-in-possession (the "Debtors") in these jointly-administered cases, hereby file this reply (the "Reply") to Rossi's[1] Response in Opposition to Debtors' Claim MSJ[2] [D.I. 6317] (the "Claim Response") and Rossi's Response in Opposition to Debtors' Motion for Summary Judgment on the Debtors' Objection to Motion for Relief from Stay filed by 8 East Frederick Place, LLC [D.I. 6316] (the "Stay Response" and, collectively with the Claim Response, the "Responses"). In support of the Reply, the Debtors rely on the concurrently-filed Supplemental Declaration of Marion Craig in Support of Debtors' (I) Motion for Summary Judgment on the Debtors' Objections to Claim No. 2242 Filed by 8 East Frederick Place, LLC and (II) Motion for Summary Judgment on the Debtors' Objection to Motion for Relief from Stay Filed by 8 East

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Debtors' MSJs (defined below).

[2] The "Claim MSJ" is the Debtors' Motion for Summary Judgment on the Debtors' Objections to Claim No. 2242 filed by 8 East Frederick Place, LLC [D.I. 6240]. The Claim MSJ and the Debtors' Motion for Summary Judgment on the Debtors' Objection to Motion for Relief from Stay filed by 8 East Frederick Place, LLC [D.I. 6239] (the "Stay MSJ") are referred to collectively as the "MSJs."

1

Frederick Place, LLC (the "Supplemental Craig MSJ Declaration"), the Craig MSJ Declaration and the Appendix. In further support hereof, the Debtors respectfully represent as follows:

**RECENT DEVELOPMENTS**

1. The Debtors are pleased to inform the Court that they have successfully remediated the Tarry Asphalt Area. The Debtors excavated approximately 7,300 square feet of soil (1,500 tons), in some areas to a depth of 7 feet, stopping only when there was no visible tar in any part of the Tarry Asphalt Area. The Tarry Asphalt Area Remediation Report detailing the extensive remediation and the results of the soil testing is attached to the Supplemental Craig MSJ Declaration as Exhibit A.

2. While remediating the Tarry Asphalt Area, the Debtors' consultant discovered diesel contamination in an adjacent area of the Property. The diesel contamination is similar to Rossi's admitted historical spills of diesel fuel and other releases at the Property, and appears consistent with Rossi's present use of the Property. Flintkote's November 10, 2011, letter informing Rossi of the discovery and disclaiming all liability is attached as Exhibit A. Flintkote's letter included reports from 1991, triggered by a citizen's complaint, which state that Mr. Rossi acknowledged and agreed to remediate similar prior contamination. *See* Ex. A, Attachment 1.

**ARGUMENT**

**I. Rossi's Rights Can Be Adjudicated as a Matter of Law**

3. Rossi's opposition relies on unsupported allegations and irrelevant factual disputes over Rossi's and Flintkote's liability. Flintkote denies liability for any remaining contamination. However, questions of relative liability are irrelevant. The sole legal question for the Claim MSJ is: does Rossi have a "claim" under the Bankruptcy Code? The sole legal

2

question for the Stay MSJ is: has Rossi established any likelihood of success on the ability to compel Flintkote to conduct further investigation and remediation of the Property?

4. The Debtors have established as a matter of law that Rossi holds, at best, a "claim" and that Rossi has not established any legal right to injunctive relief. The MSJs should be granted. Rossi's proof of claim should be disallowed and Rossi's motion for relief from stay should be denied.

## II. Rossi's Rights Reduce to a Disallowable Claim as a Matter of Law

5. Rossi's Claim is a "claim" under section 101(5) of the Bankruptcy Code and is subject to disallowance and discharge under sections 502(b) and (e). These determinations do not hinge in any way upon Flintkote's alleged liability, and can be resolved purely as a matter of law.

6. Rossi relies on the Spill Act, ISRA and ERA for its legal rights. To the extent they are even applicable, and ISRA and the ERA are not, these statutes only afford Rossi injunctive relief as an alternative to damages – giving rise to a "claim" as a matter of bankruptcy law. *See, e.g., In re Kaiser Aluminum Corp.*, 386 Fed. Appx. 201, 205 (3d Cir. 2010) ("the relevant question" in evaluating whether environmental causes of action against debtors were "claims" under Bankruptcy Code was "whether the causes of action were reducible to monetary damages."). Rossi does not dispute that its rights give rise to a "claim," instead arguing that it has other rights under the same statutes that do not. *See* Claim Response, ¶ 27 (conceding, "[i]t is undisputed that the claim for damages is a 'claim' within the definition of the Bankruptcy Code", but arguing that ERA provides injunctive relief that should trump the characterization of Rossi's rights as a "claim.").

7. Rossi does not and cannot dispute that as a matter of law the Spill Act and

3

ISRA provide a corresponding right to damages, nor does Rossi dispute that as a matter of law this renders any right to injunctive relief under these statutes a "claim" under the Bankruptcy Code. Instead, Rossi relies on its unsupported assertion that the ERA preempts the Bankruptcy Code and established Third Circuit precedent, creating a separate right to injunctive relief that is not a "claim." *See* Claim Response, ¶ 26-27. Rossi does not cite any precedent for this position and we have found none. As set forth in the MSJs, the existence of an alternative right to damages renders Rossi's Claim a "claim" under the Bankruptcy Code that is subject to disallowance and discharge.

### A. Spill Act

8. Any right to relief under the Spill Act is a "claim" under the Bankruptcy Code because the Spill Act provides for a contribution claim as an alternative to a state actor's right to injunctive relief. *See* N.J.S.A. 58:10-23.11f(2)(a); *Central Bergen Props. v. Crown Leisure Prods.*, 1996 U.S. Dist. LEXIS 22483, *11 (D.N.J. 1996) ("Because the New Jersey Spill Act provides a private right of contribution . . . it is not necessary for Plaintiff to brings its claim pursuant to the ERA."). Further, because Rossi undisputedly has not incurred any cleanup costs, its contribution claim is contingent. *See, e.g., id.* at *13-14 ("Both the plain language of the statute and its legislative history clearly state that a contribution claim under the Spill Act fails when a plaintiff has not cleaned up and removed a discharge."); *In re APCO Liquidating Trust*, 370 B.R. 625, 636 (Bankr. D. Del. 2007) (environmental claims are contingent when the claimant "has not yet incurred any future source control costs").

9. While acknowledging that its Spill Act rights give rise to a "claim," Rossi instead argues that its Spill Act claims are not disallowed under section 502(e) because it is not seeking contribution from a co-liable party. This position ignores Rossi's binding Stipulation

4

and Order limiting it to "seek[ing] contribution," *see* FK Ex. I, ¶ 6. Rossi argues that it is not co-liable under the Spill Act because it "never disposed of any materials at the site, let alone hazardous wastes like those dumped by Flintkote" and "did not begin operations at the Property until long after the contamination occurred." *See* Claim Response, ¶ 38. There is no factual support for either statement, and, as evidenced by the 1991 reports, Rossi has acknowledged responsibility for multiple discharges on its Property. *See* Ex. A, Attachment 1.

10. Rossi is liable under the Spill Act as a matter of law as both a discharger and as the owner and operator of the Property. In addition, Rossi expressly agreed under the Stipulation and Order to limit its damages to seeking "contribution from Flintkote for 'cleanup and removal costs' (as such term is defined under the Spill Act) actually incurred by Rossi." FK Ex. I, ¶ 6. Thus, Rossi's rights under the Spill Act, if any, as a co-liable party give rise to a contingent contribution claim that should be disallowed under section 502(e)(1)(B). *See, e.g., In re Chemtura Corp.*, 443 B.R. 601, 613-15, 627 (Bankr. S.D.N.Y. 2011) (disallowing private parties' contingent contribution claims under environmental statute under section 502(e)).

11. In addition to disallowance as a contingent contribution claim, Rossi's Spill Act claim should be disallowed under section 502(b)(1) for failure to comply with the requirements imposed in the Stipulation and Order limiting Rossi to a claim for (i) remediation costs "actually incurred by Rossi," and (ii) related to contamination "for which Flintkote is ultimately determined to be responsible under the Environmental Statutes." FK Ex. I, ¶ 6; *see* Claim Response, ¶ 40 (acknowledging that Flintkote's liability is "an undecided factual issue").

B. **Industrial Site Recovery Act**

12. ISRA does not apply to Flintkote as it was not enacted until 1983, more

5

than a decade after Flintkote sold the Property. *See* 1983 N.J. Laws ch. 330;[3] *see also Inmar Assocs., Inc. v. Borough of Carlstadt*, 518 A.2d 1110, 1113 (N.J. Super. Ct. App. Div. 1986) ("Neither ECRA nor [legislative history] indicates any intent to give the legislation retroactive effect. Absent a clear intent for retroactive application, the statute should be given prospective effect only."). Rossi offers no argument or authority for how ISRA creates liability for Flintkote. Even if ISRA did apply to Flintkote, it would merely give rise to monetary relief reducible to a "claim." *See* N.J.S.A. 13:1K-13a (providing that transferor's failure to remediate "entitles the transferee to recover damages from the transferor").

### C. Environmental Rights Act

13. The ERA does not allow Rossi to avoid the reality that, at best, it holds a "claim" under the Bankruptcy Code. The ERA is an enabling statute that permits a private party, under very limited circumstances, to seek injunctive relief under other environmental laws. The ERA "does not confer any substantive rights directly. It grants private plaintiffs standing to enforce other New Jersey environmental statutes 'as an alternative to inaction by the government which retains primary prosecutorial responsibility.'" *Pannacione v. Holowiak*, 2008 WL 4876577, at *4 (N.J. Super. Ct. App. Div. Nov. 12, 2008); *see also, e.g., Bowen Eng'g v. Estate of Reeve*, 799 F. Supp. 467, 478-79 (D.N.J. 1992) (holding that plaintiffs could not seek relief under ERA that was unavailable under Spill Act because "plaintiffs' rights under the ERA are derivative of their rights under the Spill Act"). The ERA simply permits a private party that would otherwise only have recourse to damages, such as under the Spill Act, to seek injunctive relief as a supplemental right under that statute. The Bankruptcy Code, the Third Circuit and

---

[3] Environmental Cleanup Responsibility Act ("ECRA"), enacted in 1983 pursuant to 1983 N.J. Laws ch. 330, is now know as ISRA. *See* N.J.S.A. 13:1K-6 *et seq.*; *and* 1993 N.J. Laws ch. 139.

many other jurisdictions have already established that any equitable right reducible to damages, including the ability to "convert[] the injunction into a monetary obligation" is a "claim" under section 101(5). *See, e.g., Torwico Elec., Inc. v. State of New Jersey Dep't of Envtl. Protection & Energy (In re Torwico Elec., Inc.)*, 8 F.3d 146, 150 (3d Cir. 1993).

    14. The ERA has limited applicability, and has not been triggered by Flintkote's alleged conduct at the Rossi Property. The ERA is only available to (i) remedy a violation under another environmental statute, (ii) "as an alternative to inaction by government which retains primary prosecutorial responsibility," *see* N.J.S.A. 2A:35A-4(b), if (iii) there is a "violation, either continuously or intermittently, of a statute, regulation or ordinance, and that there is a likelihood that the violation will recur in the future." *Bowen Eng'g*, 799 F. Supp. at 479 (twenty-year-old contamination did not give rise to "a cause of action against this defendant to seek injunctive or other equitable relief under the Spill Act through the ERA" because defendant was not continuously or intermittently violating the Spill Act nor likely liable for future violations). As a matter of law Flintkote is not continuously or intermittently violating any environmental statutes, regulations or ordinances, and nearly forty-years after selling the Property, it defies common sense to argue that any alleged violation "will recur in the future." *Id.*[4]

## III. Rossi Has No Right to Injunctive Relief as a Matter of Law

    15. Rossi not established any likelihood of success on the ability to compel Flintkote to investigate and remediate the Property. As a matter of law, all of Rossi's rights

---

[4] To trigger the ERA, Rossi alleges that Flintkote has violated ISRA. *See* Claim Response, ¶ 28 ("As Flintkote failed to remediate the Property as required by N.J.S.A. 13:1K-9b, and as Flintkote is continuing to fail to satisfy the terms of N.J.S.A. 13:1K-11.10 by not supplying an acceptable memorandum of agreement to the NJDEP, it has twice violated a statute to which the Environmental Rights Act applies."). ISRA does not apply to Flintkote and therefore Flintkote, as a matter of law, could not have violated it and triggered the ERA.

7

reduce to a bankruptcy "claim" and therefore do not give rise to injunctive relief. Rossi has no right to compel investigation or remediation under the Spill Act because the Spill Act provides for damages as an alternative remedy. Likewise, ISRA, which is not applicable to Flintkote, provides for damages as an alternative remedy. The ERA is similarly inapplicable, and only provides for injunctive relief as a supplement to statutes that already provide for damages. Without any likelihood of success in obtaining an injunction when all it has is a "claim," Rossi's motion for relief from stay to commence a brand new state court action seeking an injunction must be denied. Consequently, the Stay MSJ should be granted.

### IV. Rossi's Remaining Arguments Are without Merit

16. Rossi presents various additional arguments in the Responses, asserting that (i) the Debtors are estopped from seeking summary judgment; (ii) this Court lacks jurisdiction to adjudicate the Claim; (iii) even if Rossi's Claim constitutes a "claim" under the Bankruptcy Code, it is not dischargeable; and (iv) the Debtors have waived the ability to contest relief from stay on the merits if the Stay MSJ is denied. These arguments are meritless for the reasons set forth below.

#### A. The Debtors Are Not Estopped from Challenging Rossi's Claim

17. Rossi argues that Flintkote is estopped from "arguing that [Rossi] should have remediated the Property" because Flintkote "represented to both [Rossi] and the [NJDEP] that it would investigate and remediate the Property." Claim Response, ¶ 46 (citing FK Exs. C, K, N, Q; Stay Response, ¶ 45 (same). Rossi claims that "there was no method by which [Rossi] could have learned of Flintkote's current decision to disclaim any and all liability for the contamination at the Property." Claim Response, ¶ 47.

18. Flintkote has repeatedly given Rossi "documents that provided him with

8

the ability to make an informed choice" to remediate. *See In re Exide Techs.*, 378 B.R. 762, 767 n.5 (Bankr. D. Del. 2007). Rossi's reliance on *Exide* is misplaced, and estoppel is inapplicable.

19. The materials Rossi cites as the Debtors' "representations" do not support, and in fact contradict its estoppel claim. These materials demonstrate that the Debtors have consistently asserted that (i) the Debtors are not liable for the contamination; (ii) Rossi's Claim should be disallowed under sections 502(b) and (e); (iii) Flintkote's remediation is voluntary and subject to termination at any time; and (iv) the Debtors' willingness to remediate is contingent upon their ability to reach a settlement with Rossi and the NJDEP. *See* FK Ex. C, ¶¶ 15-16, 26-27, 40, 46, Ex. K, ¶¶ 1, 16-17, Ex. N, ¶¶ 2, 18-19, 25-28, Ex. Q, ¶ 4.

### B. This Court Is the Proper Forum to Adjudicate Rossi's Claim

20. The issues of whether Rossi has a "claim" or a separate right to injunctive relief give rise to core proceedings. This Court is not only the most appropriate forum, but the only appropriate forum, to adjudicate these core questions of bankruptcy law.

21. Rossi's abstention argument, raised for the first time in its Responses is a red herring. Rossi has never moved for abstention, and abstention is neither before this Court nor warranted. Myriad courts, including the Third Circuit, have found it appropriate for bankruptcy courts to interpret and apply state environmental laws affecting the administration of a bankruptcy estate. *See, e.g., Torwico*, 8 F.3d at 150. In *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the Supreme Court found, as quoted by Rossi, that bankruptcy courts have jurisdiction to determine issues that "would necessarily be resolved in the claims allowance process." *See* Claim Response, ¶ 45 (quoting *Stern*, 131 S. Ct. at 2618).

### C. Rossi's Claim Is Dischargeable

22. Rossi's "claim" under the Bankruptcy Code is dischargeable. The cases

cited by Rossi as "disallow[ing] the discharge of a responsibility to remediate environmental contamination," Claim Response, ¶ 30, do not support the broad proposition Rossi ascribes to them. Rossi is not a state actor and there is no imminent and identifiable threat to the public. Rather, Rossi's allegations are precisely the type of "repackaged claim for damages" that the Third Circuit found constitute a dischargeable "claim." *See Torwico*, 8 F.3d at 150.

### D. The Debtors Have Not Waived the Ability to Oppose Relief From Stay

23. Rossi claims that by limiting the MSJs to the elements of the *Rexene* test that can be established as a matter or law, the Debtors have somehow waived the ability to contest Rossi's motion for relief from stay on factual grounds. *See* Stay Response, ¶¶ 2, 28. This is a preposterous claim. Limiting the focus of the MSJs to the appropriate legal inquiries is not a waiver of any arguments under *Rexene*, the 12-factor test of *In re SCO Group, Inc.*, 395 B.R. 852 (Bankr. D. Del. 2007), or any other applicable law, that Rossi is not entitled to relief from the automatic stay.[5]

24. If this Court denies either the Claim MSJ or the Stay MSJ, the Debtors agree with Rossi that discovery is required before any additional rulings can be issued with respect to Flintkote's liability to Rossi or the appropriateness of relief from the automatic stay. *See* Claim Response, ¶ 40 ("Whether Flintkote contaminated the site is an undecided factual issue that needs to be determined in order to ensure that the proper party is held responsible for the remediation of the Property."); Stay Response, ¶ 39 ("[I]t is necessary to engage in fact discovery to determine the extent of remediation that has been performed by Flintkote.").

---

[5] In stating that the 12-factor *SCO Group* test was "beside the point," the Debtors were neither rejecting precedent nor conceding that the test weighed in Rossi's favor. The relevant question was and remains whether or not Rossi is entitled to relief from stay as a matter of law. An inquiry into the 12 *SCO Group* factors will only be relevant if the Stay MSJ is denied and the parties actually litigate whether Rossi is entitled to relief from the automatic stay as a factual and legal matter.

10

## CONCLUSION

25. The Debtors respectfully request that this Court grant the Debtors' MSJs and enter Orders substantially similar in form to the Proposed Orders filed by the Debtors on October 25, 2011. *See* [D.I. 6291] Ex. A; [D.I. 6292] Ex. A.

Dated: November 23, 2011

SIDLEY AUSTIN LLP
Kevin T. Lantry
Jeffrey E. Bjork
Jeremy E. Rosenthal
555 West Fifth Street
Los Angeles, California 90013-6000
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

- and -

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
Curtis A. Hehn (Bar No. 4264)
Scotta E. McFarland (Bar No. 4184)
Kathleen P. Makowski (Bar No. 3648)
919 North Market Street, 17th Floor, P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Co-Counsel for Debtors and Debtors in Possession